IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

**- FILED UNDER SEAL -**
**PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

ERINYS IRAQ LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

AEGIS DEFENCE SERVICES LTD.,

Defendant-Intervenor.

No. 07-562C

Judge Christine O. C. Miller

## ERINYS' MOTION FOR AN INJUNCTION PENDING APPEAL

Pursuant to Rule 62, Erinys respectfully moves for an injunction prohibiting the Joint Contracting Command-Iraq/Afghanistan from awarding a contract on Solicitation No. W91GXZ-07-R-0004 or, if such an award has already occurred, from performing such contract, pending the appeal of this Court's judgment resulting from its August 29, 2007 Memorandum Opinion ("Opinion") and Order. Erinys intends to file its appeal at the U.S. Court of Appeals for the Federal Circuit as soon as the Court enters the judgment on this matter.

/s/ Robert S. Nichols
Robert S. Nichols, Esq.
(Counsel of Record)

Frederick W. Claybrook, Jr.
Angela B. Styles, Esq.
Elizabeth W. Newsom, Esq.
Charlotte E. Gillingham, Esq.
Dane C. Swanson, Esq.

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2541
Fax: (202) 628-5116
Protected Fax: (202) 508-8989
Attorneys for Plaintiff
Erinys Iraq Ltd.

August 31, 2007

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

**FILED UNDER SEAL PROTECTED INFORMATION TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

ERINYS IRAQ LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

AEGIS DEFENCE SERVICES LTD.,

Defendant-Intervenor.

No. 07-562C

Judge Christine O. C. Miller

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ERINYS' MOTION FOR AN INJUNCTION PENDING APPEAL

### I. Standard

The United States Court of Appeals for the Federal Circuit enumerated the following four requirements for an injunction in *Standard Havens Products v. Gencor Industries*, 897 F.2d 511 (Fed. Cir. 1990):

> (1) whether the movant has made a strong showing that he is likely to succeed on the merits;
>
> (2) whether the movant will be irreparably injured absent an injunction;
>
> (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and
>
> (4) where the public interest lies.

## II. Argument

As this Court observed during the oral argument on August 21, 2007, this procurement did not have "scabs" but, rather, "gaping wounds." Opinion at 59. Thus, the Court's decision on the merits appears to have been a "close call." Erinys seeks to have the Federal Circuit review the merits of its arguments. If an injunction is not granted, however, Erinys' appeal will be made moot because the new contract will be awarded to another offeror, Erinys' incumbent contract will be terminated, and Erinys will begin to lose its workforce.

### A. Erinys Has a Strong Likelihood of Success on the Merits

Erinys respectfully submits that the Court's Opinion did not fully or accurately capture Erinys' attack on the price evaluations and did not reach the correct result regarding the fundamental flaws in the price analysis.

Erinys did not contest that the Agency "structured its solicitation requirements such that offerors would provide sufficient information for the JCC-I/A to render a rational price realism analysis" and that "[t]he extensive information available to the SSA allowed for price realism to be determined in a rational manner." Opinion at 19-20.[1] Rather, Erinys protested the fact that the Record contains no evidence that the Agency in fact used the information it had obtained to conduct a rational price analysis in this circumstance.

[1] Contrary to the insinuation at footnote 6 of the Opinion (p.23-24), Erinys' protest did not challenge the RFP's terms or evaluation scheme. Rather, Erinys protested the fact that the Agency did not utilize the information provided by the offerors to conduct a rational price evaluation.

The Court notes at page 20 of its opinion that "the SSA determined that Aegis's, ArmorGroup's, and plaintiff's prices were all realistic. See AR Tab 41 at 2804, 2812, 2835." Yet neither the Record nor the Court's Opinion actually identifies any evidence of a rational basis for these conclusions. Where the Record does not show that the Agency engaged in an appropriate and rational apples analysis, the Court cannot assume that such an analysis was performed. *Cf. Al Ghanim Combined Grp. v. United States*, 56 Fed. Cl. 502, 514 (2003).

The Court also stated, "Plaintiff's operating premise that a particular analysis was required is not correct." Opinion at 20. This misapprehends the argument. Erinys' operating premise was that the *particular* realism analysis chosen by an agency – whatever it may be – must be *rational* in the specific circumstances of the procurement at issue. The analysis undertaken by the Agency here was neither explained nor rational.

The Agency and Aegis argued that a simple price comparison is a rational basis for a price realism analysis. However, such an approach was not rational in this case given the "red flags" contained in the proposals: (1) Aegis' proposed unit prices were significantly lower than its current pricing and lower than the IGE without any meaningful explanation or analysis to account for the large differences; (2) the unit prices for each CLIN were dramatically different for each offeror without any meaningful explanation or analysis to account for the large differences; and (3) there were significant differences in the "quantity" definition proposed by the offerors without any meaningful explanation or analysis. These "red flags" were

indications of risks that particular teams could not perform for the prices they promised. Yet there is no indication that the Agency even looked at these "red flags" to understand the reasons for them or to consider the risks to the Agency.

Additionally, the Court was misled by the Government's and Aegis' post hoc rationalizations during the hearing about the significance of each offerors' drastically different assumptions concerning productive labor hours. Just because an offeror guarantees 24/7 service does not mean that the offeror will be able to fulfill that promise if it relied on unrealistic pricing assumptions. This is precisely the type of risk that a price realism analysis is intended to ferret out, but there is no evidence in the Record that the Agency identified these risks and considered them.

Erinys believes it is likely to succeed on its price arguments at the Court of Appeals and that the Agency will have better and more competition as a result. The Federal Circuit should have the opportunity to consider the merits.

### B. Erinys Will Be Irreparably Harmed If the Court Does Not Grant an Injunction Pending Appeal

The Court has already found that Erinys would be irreparably harmed if the Agency is allowed to proceed with awarding the contract to another contractor. *See* Opinion at 29. The relevant inquiry in weighing this factor is whether Erinys "has an adequate remedy in the absence of an injunction." *PGBA LLC v. United States*, 57 Fed. Cl. 655, 664 (2003), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004). This standard is easily met here because Erinys will lose the opportunity to compete for the award. *See* Declaration of Michael Hutchings ("Hutchings Decl."), Exh. 4 to the Amended

Complaint, ¶¶ 7. It is well settled that the lost opportunity to compete for award of a government contract constitutes irreparable harm.

In addition, once the contract is awarded, the new contractor will begin to transition in and take over performance of those portions of the work currently being performed by Erinys. *Id.* ¶ 12. Erinys will begin to loose revenue from its performance as soon as the transition begins. *Id.* That revenue cannot be replaced, even if Erinys eventually prevails on the protest and wins the contract award, because the revenue is for work performed daily. *Id.*

Furthermore, Erinys will begin to lose the workforce it has built up and trained over many years to perform this contract, as those workers seek employers with longer-term prospects. *Id.* ¶¶ 8-9. Indeed, one of the competitors for the RSSS contract has stated its intention to try to hire and retain the incumbent workforce for performance of the contract. AR Tab 41 at 2804. If Erinys' employees depart for other jobs or opportunities, Erinys will lose one of its most valuable assets and a significant competitive advantage. Hutchings Decl. ¶ 9. Erinys has carefully built, trained, and retained a very capable workforce over the last 3½ years of contract performance, a workforce that has achieved a stellar record of performance and is highly committed. *Id.* ¶ 8. Once those employees start to depart for other opportunities, it will hurt Erinys' ability to compete for this RSSS reprocurement as well as for other security contracts. *Id.* ¶ 9. If Erinys wins its protest and the Agency allows Erinys to continue to compete for award, Erinys will have lost an asset that it considers one of its strongest advantages over its competitors. *Id.* In

the highly competitive security market, companies need a certain critical mass of employees to maintain an infrastructure and marketing presence. *Id.* Without that critical mass, Erinys' ability to market its services to other potential customers in Iraq will be damaged. *Id.*

### C. The Other Two Factors

The issuance of an injunction will not substantially injure the other parties. As noted by the Court, the Government has made no showing that matters of national defense or national security will be implicated by an injunction. Opinion at 28. Furthermore, during oral argument, the Agency conceded that, "if there's an injunction and the solicitation needs to be redone, the government can cover these services." *Id.* at 28 n. 6 (citing Tr. at 57). Therefore, the Government will have full coverage – and Aegis will be able to continue performing its current RSSS contract.

Indeed, the Court observed only one only potential harm to the public interest if a *permanent* injunction were granted: that the Government would not realize the potential cost-savings from consolidating the RSSS contract. *Id.* While that may be true for a permanent injunction, this harm would only be temporary during the pendency of the appeal; the Agency will eventually award a single contract. Indeed, the Agency may end up *saving* money as a result of the appeal, because the ultimate remedy that Erinys seeks in this protest – inclusion in the competitive range and being permitted to continue to compete – will increase competition that will likely result in lower prices. An injunction that may result in

lowering the cost to the taxpayers of the work to be performed is in the public interest. *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98 (2004).

## III. Conclusion

If the Court does not grant an injunction pending appeal, Erinys' appeal will be mooted because the new contract will be awarded, its incumbent contract will be terminated, and Erinys will begin to lose its workforce. This should not occur before the Federal Circuit has an opportunity to review the merits in this "close call" case. For the foregoing reasons, Erinys respectfully requests that, pending appeal of this Court's August 29, 2007 Order, this Court enter an injunction prohibiting the Agency from awarding a contract on Solicitation No. W91GXZ-07-R-0004 or, if such an award has already occurred, from performing such contract.

Respectfully submitted,

/s/ Robert S. Nichols
Robert S. Nichols, Esq.
(Counsel of Record)
Frederick W. Claybrook, Jr.

Angela B. Styles, Esq.
Elizabeth W. Newsom, Esq.
Charlotte E. Gillingham, Esq.
Dane C. Swanson, Esq.

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2541
Fax: (202) 628-5116
Protected Fax: (202) 508-8989

Attorneys for Plaintiff
Erinys Iraq Ltd.

August 31, 2007