AGREED UPON REDACTIONS MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| ERINYS IRAQ LTD.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant<br><br>and<br><br>AEGIS DEFENCE SERVICES LTD.<br><br>Intervenor-Defendant. | CFC No. 07-562C<br><br>Judge Christine O.C. Miller<br><br>**FILED UNDER SEAL**<br><br>Proposed Redacted Version for Public Release |

**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND BRIEF OF AEGIS DEFENCE SERVICES LTD.**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: August 10, 2007

**PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

**TABLE OF CONTENTS**


Table of Authorities .......... iv

INTRODUCTION .......... 1

STATEMENT OF THE ISSUES .......... 4

STATEMENT OF THE CASE AND STATEMENT OF FACTS .......... 5

A. Procurement Background and Solicitation .......... 5

B. The Army Responds to Offerors' Pre-Proposal Questions and Confirms the Performance-Based Aspects of the Contract to be Awarded .......... 6

C. The Erinys Proposal Takes Exception to Mandatory RFP Requirements and Fails to Follow Solicitation Instructions .......... 8

D. The Aegis Proposal Properly Explains Apparent Differences in the Aegis Technical and Cost Proposal .......... 9

E. First Competitive Range Determination .......... 10

F. Erinys Protests to GAO and then the Court .......... 10

G. The Government Agrees to Take Corrective Action .......... 11

H. The Government Reevaluates and Makes A New Competitive Range Determination .......... 11

I. The New Evaluation Confirms Multiple Erinys Material Weaknesses and that Erinys's Price Was Substantially Higher Than Any Other Offeror .......... 13

ARGUMENT .......... 14

I. STANDARD OF REVIEW .......... 14

II. THE ARMY PROPERLY EXCLUDED ERINYS FROM THE COMPETITIVE RANGE .......... 17

A. The FAR Standard .......... 17

B. The Development of the FAR Part 15 Rewrite Confirms that the Revised Regulation Gave the Agencies Discretion to Sharply Narrow the Number of Proposals Eligible for Inclusion in the Competitive Range .......... 18


~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

C. The Determination of the Competitive Range Under the Revised Standard Reinforces Agency Judgment and Discretion .................... 20

D. Erinys's Proposal Is Not One of the "Most Highly Rated" ................ 22

E. Agencies are Permitted to Exclude an Offeror from the Competitive Range Based on Price Considerations .......................... 23

F. The Competitive Range Determination Was Based Solely on Evaluation of Proposals and did Not Consider Post-Competitive Range Discussions ........................................................................ 24

G. Erinys Was Not Entitled to Pre-Competitive Range Communications ........................................................................ 26

III. THIS COURT'S REVIEW MUST FOCUS ON THE PROPRIETY OF THE COMPETITIVE RANGE DETERMINATION, NOT THE SCOPE OF INFORMATION PROVIDED DURING THE DEBRIEFING ............. 27

IV. THE ARMY PROPERLY EVALUATED PRICE ...................................... 28

A. The RFP Requirements ........................................................................ 28

B. Agencies Have Significant Discretion in Evaluating Price and Price Realism; in a Fixed Price Contract, the Risk is on the Contractor, Not the Agency ........................................................... 30

C. The Army Properly Took into Account Erinys's Substantially Higher Unit Prices ........................................................................ 31

D. Erinys's Misfortunes Are the Result of Poor Bidding Strategy, Not Any Agency Action ........................................................... 33

E. Erinys Improperly Proposed to Change the Contract Type ............... 35

CONCLUSION ........................................................................................ 37

CERTIFICATE OF SERVICE ........................................................................ 38



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

APPENDIX

Declaration of Charles L. Bonuccelli ............ 1-4

Exhibit 1: Bonuccelli Professional Qualifications ............ 5-6

Exhibit 2: AR, Tab 16 at 116-62 ............ 7-8

Exhibit 3: Unit Prices for Base Year and Option Year ............ 9-10

Exhibit 4: Comparison of Prices Using IGE ............ 11-12

Erinys Iraq Ltd. June 1, 2007 Complaint ............ 13-45

Report of the Acquisition Advisory Panel to the Office of Federal Procurement Policy and the US Congress (January 2007) ............ 46-47



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

Acepex Mgmt.,
B-279173.5, July 22, 1998, 98-2 CPD ¶ 128 ........ 30

Americom Gov't Servs., Inc.,
B-292242, August 1, 2003, 2003 CPD ¶ 163 ........ 22

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000) ........ 15

Blue & Gold Fleet, LP v. United States and Hornblower Yachts, Inc.,
___ F.3d ___, No 2006-5064, 2007 U.S. App. LEXIS 15150
(Fed. Cir. June 26, 2007) ........ 4, 32

Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,
419 U.S. 281 (1974) ........ 15

Brian X. Scott v. United States,
No. 07-00216 ........ 10

Burns & Roe Servs., Corp.,
B-296355, July 27, 2005, 2005 CPD ¶ 150 ........ 31

CACI Techs., Inc.,
B-296946, October 27, 2005, 2005 CPD ¶ 198 at 5 ........ 20

Cardinal Scientific, Inc.,
B-270309, February 12, 1996, 96-1 CPD ¶ 70 ........ 30

Cleveland Telecommunications Corp. v. Goldin,
43 F.3d 655 (Fed. Cir. 1994) ........ 16

CMC & Maint., Inc.,
B-290152, June 24, 2002, 2002 CPD ¶ 107 ........ 23

Computer & Hi-Tech Mgmt., Inc.,
B-203225.4, March 2, 2004, 2004 CPD ¶ 45 ........ 22

CRC Marine Servs., Inc. v. United States,
41 Fed. Cl. 66 (1998) ........ 15



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Data General Corp. v. Johnson,
78 F.3d 1556 (Fed. Cir. 1996) ..... 16

Del-Jen Int'l Corp.,
B-297960, May 5, 2006, 2006 CPD ¶ 81 ..... 28

Dismas Charities, Inc.,
B-284754, May 22, 2000, 2000 CPD ¶ 84 ..... 21

EER Sys., Inc.,
B-290971.3, B-290971.6, October 23, 2002, 2002 CPD ¶ 186 ..... 28

Electro-Methods, Inc. v. United States,
7 Cl. Ct. 755 (1985) ..... 15

Everpure, Inc.,
B-226395.2-.3, September 20, 1988, 88-2 CPD ¶ 264 ..... 17

Galen Med. Assocs., Inc. v. United States,
369 F.3d 1324 (Fed. Cir. 2004) ..... 15

Gov't Telecommunications, Inc.,
B-299542.2, June 21, 2007, 2007 CPD ¶ --,
2007 U.S. Comp. Gen. LEXIS 127 ..... 20, 22, 23, 27

Grove Resource,
B-296228-.2, July 1, 2005, 2005 CPD ¶ 133 ..... 24, 30

HDL Research Lab, Inc.,
B-294959, December 21, 2004, 2005 CPD ¶ 8 ..... 21

Ideal Elec. Sec. Co., Inc.,
B-283398, November 10, 1999, 99-2 CPD ¶ 87 ..... 28

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) ..... 14, 15, 16

Info. Sciences Corp. v. United States,
73 Fed. Cl. 70 (2006) ..... 30, 31

Jack Faucett Assocs.,
B-224414, September 16, 1986, 86-2 CPD ¶ 310 ..... 23

Kentron Hawaii, Ltd. v. Warner,
480 F.2d 1166 (D.C. Cir. 1973) ..... 16



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Kentucky Bridge and Dam, Inc.,
B-235806, July 17, 1989, 89-2 CPD ¶ 56 .......... 26

Labat-Anderson, Inc. v. United States,
50 Fed. Cl. 99 (2001) .......... 30

Latecoere Int'l, Inc. v. United States Dep't of Navy,
19 F.3d 1342 (11th Cir. 1994) .......... 16

Lockheed Martin Simulation, Training & Support,
B-292836.8 et al., November 24, 2004, 2005 CPD ¶ 27 .......... 27

Matrix Gen., Inc.,
B-282192, June 10, 1999, 99-1 CPD ¶ 108 .......... 22

Nat'l Shower Express, Inc.; Rickaby Fire Support,
B-293970-.2, July 15, 2004, 2004 CPD ¶ 140 .......... 22

Novavax, Inc., B-286167-.2,
December 4, 2000, 2000 CPD ¶ 202 .......... 21

PHP Healthcare,
B-251933, May 13, 1993, 93-1 CPD ¶ 381 .......... 30

Puglia Eng'g of Cal., Inc.,
B-297413, January 20, 2006, CPD ¶ 33 .......... 30

Saratoga Dev. Corp. v. United States,
21 F.3d 445 (D.C. Cir. 1994) .......... 15

SDS Petroleum Prods., Inc.,
B-280430, September 1, 1998, 98-2 CPD ¶ 59) .......... 20

Southern Foods, Inc. v. United States,
76 Fed. Cl. 769 (2007) .......... 16

Statistica, Inc. v. Christopher,
102 F.3d 1577 (Fed. Cir. 1996) .......... 16

Stewart Distribs.,
B-298975, January 17, 2007, 2007 CPD ¶ 27 .......... 22

Sys. Integrated,
B-225055, February 4, 1987, 87-2 CPD ¶ 114 .......... 17, 23



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Tech. Sys. Inc. v. United States,
50 Fed. Cl. 216 (2001) .......... 21

TekStar, Inc., B-295444-.2,
February 18, 2005, 2005 CPD ¶ 53 .......... 21

Telos Corp.,
B-279493.3, July 27, 1998, 98-2 CPD ¶ 30 .......... 24

Trellclean, U.S.A., Inc.,
B-213227.2, June 25, 1984, 84-1 CPD ¶ 661 .......... 28

Tulane Univ.,
B-259912, April 21, 1995, 95-1 CPD ¶ 210) .......... 28

U.S. Facilities, Inc.,
B-293029-.2, January 14, 2004, 2004 CPD ¶ 17 .......... 26

University Research,
B-294358.8-.10, April 6, 2006, 2006 CPD ¶ 61 .......... 26

**Statutes**

10 U.S.C. § 2305(b)(4)(B) .......... 20

41 U.S.C. § 253(b)(d)(2)
(as amended by P.L. 104-106, § 4103, 110 Stat. 186 (Feb. 10, 1996) .......... 20

5 U.S.C. § 706(2)(A) .......... 15

**Regulations**

4 C.F.R. § 21.11 .......... 10

61 Fed. Reg. 48380, 48389 (September 12, 1996) .......... 19

62 Fed. Reg. 51,224, 51,226 (September 30, 1997) .......... 19

FAR 15.305(a) .......... 20

FAR 15.306 .......... 19, 24, 25

FAR 15.306(a) .......... 19



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

FAR 15.306(b) .......... 26

FAR 15.306(c)(1) .......... 2, 17, 19, 20

FAR 15.306(d)(1) .......... 25

FAR 15.306(e)(3) .......... 28

FAR 15.404-1(b) .......... 30

FAR 15.505(f)(6) .......... 28

FAR 15.506(e)(3) .......... 28

FAR 15.609(a) .......... 17, 18

**Rules**

RCFC 52.1(b) .......... 5

**Other**

Clinger-Cohen Act of 1996, P.L. 104-106 .......... 19

John S. Pachter, Jonathan D. Shaffer, Christina M. Pirrello, "Source Selection Provisions of the FAR Part 15 Rewrite – A Train Wreck Avoided," 39 Government Contractor ¶ 578 (December 10, 1997) .......... 18

John S. Pachter, Jonathan D. Shaffer, Christina M. Pirrello, "The FAR Part 15 Rewrite," 98-5 Briefing Papers (April 1998) .......... 18

Ralph C. Nash and John Cibinic, "The FAR Part 15 Rewrite: A Final Scorecard," 11 N&CR ¶ 63, at 183-189 (December 1997) .......... 18

Ralph C. Nash and John Cibinic, 9 Nash & Cibinic Report at Dateline December 1995 .......... 18

Report of the Acquisition Advisory Panel to the Office of Federal Procurement Policy and the United States Congress, January 2007 .......... 35



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED UPON REDACTIONS - MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| ERINYS IRAQ LTD. | |
| Plaintiff, | |
| v. | CFC No. 07-562C |
| THE UNITED STATES OF AMERICA | Judge Christine O.C. Miller |
| Defendant | **FILED UNDER SEAL** |
| and | |
| AEGIS DEFENCE SERVICES LTD. | |
| Intervenor-Defendant. | |

**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND BRIEF OF AEGIS DEFENCE SERVICES LTD.**

Aegis Defence Services Ltd. ("Aegis"), by counsel, pursuant to Rule 52.1 of the Rules of this Court ("RCFC") and pursuant to this Court's Scheduling Order dated July 30, 2007, respectfully requests that the Court grant judgment in favor of the Defendant United States Army Joint Contracting Command-Iraq/Afghanistan (the "Army" or "JCC-I/A") and Intervenor-Defendant Aegis and against the Plaintiff Erinys Iraq Ltd. ("Erinys").

## INTRODUCTION

In its Complaint, Erinys challenges virtually every aspect of this procurement. However, Erinys ignores the applicable legal standard. The Federal Acquisition Regulation ("FAR") requires, in pertinent part, that "the contracting officer shall establish a competitive

range comprised of all of the ***most highly rated proposals*** ...." FAR 15.306(c)(1). (emphasis added).

The Army reasonably determined that Erinys's proposal was not among "the most highly rated proposals." For the non-Price factors, Erinys ranked [redacted] Aegis, ArmorGroup North America, Inc. ("ArmorGroup") [redacted] For Price, Erinys ranked [redacted] In this fixed price contract, Erinys's unit prices were substantially higher than any other offeror and at least [redacted] higher than the competitive range offerors, Aegis and ArmorGroup. Appendix, at 3, 12, Charles Bonuccelli Declaration ("Bonuccelli Decl."), ¶ 6 and Exhibit 4, p. 2.

The Army's price analysis fully complied with requirements of the Request for Proposals ("RFP") and the FAR. In addition, Erinys took exception to the fixed-price incentive, performance-based nature of the procurement, and thereby submitted a non-compliant proposal. Erinys objected to the performance incentives tied to pricing that were significant to the Army and emphasized in the RFP.

Erinys also states that it made certain assumptions about the Army's requirements that prompted Erinys to conceive of the RFP as calling for a "gold standard" solution at an exceedingly high price. It is difficult to reconcile Erinys's "gold standard" claim with the numerous weaknesses in its proposal, including its failure to identify key personnel in charge of its six Operations Centers. AR, Tab 41 at 2829, 2830. Now that Erinys has seen the competition, it says it would have used a different approach. However, Erinys does not suggest it was misled by the Army, and in fact it was not. In addition to its exorbitant price, Erinys's technical approach was not among the most highly rated and its demonstrated understanding of Management requirements was mediocre at best. Erinys's Past



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Performance contained weaknesses, and Erinys even failed to provide accurate information on its own past performance. Thus, while Erinys asserts that it proposed a technically superior approach, justified by a high price, in fact it submitted a highly priced technical and management approach that did not compare favorably with other proposals. In short, Erinys asks this Court to bail it out of a flawed bidding strategy and its own mistakes.

The Army was well within its discretion in excluding Erinys from the competitive range. Erinys nevertheless asserts that the Army should have given Erinys an opportunity to clear things up in oral discussions, followed by submission of a Final Proposal Revision ("FPR"). In that way, Erinys suggests, it might overhaul its proposal and improve its competitive posture. But that is not the test in a competitive range challenge. What Erinys asks is that the Court substitute its judgment for that of the contracting agency, and this the Court cannot do.

The agency is only required to conduct discussions with offerors in the competitive range. Nor does the possibility of limited communications, which may be conducted in the agency's discretion before making a competitive range determination, offer any relief to Erinys. The Erinys problems were too significant to cure through "clarifications." An offeror that is not among the "most highly rated" cannot insinuate itself into the competitive range by asserting a non-existent right to resolve issues through discussions and thereby salvage a failed proposal.

Further, the Army properly excluded Erinys from the competitive range because Erinys refused to propose incentive terms required by the solicitation. The contract type the Army selected for this procurement is performance-based fixed price with incentive fee. By taking exception to the contract type and declining to propose an incentive fee, Erinys seeks



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

to convert the contract type to firm fixed price with a fixed fee only. The incentive fee provision, however, is critical to the Army's ability to obtain the highest level of performance demanded in the unforgiving environment of security operations safeguarding the lives of important officials in Iraq. The Army made that clear in several places in the RFP, including the evaluation factors for award. Nevertheless, with its unusually high price, Erinys attempted to award a bonus fee to itself at the front end, regardless of whether it was able to demonstrate entitlement to it through the incentive fee provisions. No wonder, then, that Erinys says it does not need the incentive fee provision.

By refusing to accept the incentive fee terms, Erinys sought to remove compensation tied to the contractor's achievement of the performance-based outcomes set forth in the statement of work. Thus, Erinys's proposal is contrary to the entire nature of the performance-based contract set forth in the RFP. Erinys failed to protest the terms of the solicitation in timely fashion before submitting its proposal. Its exception in its proposal to the incentive fee provision comes too late and makes its proposal non-compliant. Blue & Gold Fleet, LP v. United States and Hornblower Yachts, Inc., ___ F.3d ___, No 2006-5064, 2007 U.S. App. LEXIS 15150, at *11 (Fed. Cir. June 26, 2007) (where there is a "deficiency or problem in the solicitation … the proper procedure for the offeror to follow is not to wait to see if it is the successful offeror before deciding whether to challenge the procurement, but rather to raise the objection in a timely fashion." (internal quotations omitted (citing cases)).

## STATEMENT OF THE ISSUES

1. Whether the agency is permitted to exclude from the competitive range a proposal that was not one of the most highly rated proposals.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

2. Whether the agency is permitted to exclude from a competitive range of two offerors a proposal that was rated fourth for the non-price factors and had the highest price.

3. Whether the agency is permitted to exclude from the competitive range an offeror that proposed to change the contract type.

## STATEMENT OF THE CASE AND STATEMENT OF FACTS

Pursuant to RCFC 52.1(b), Aegis submits the following statement of relevant facts:

### A. Procurement Background and Solicitation

On January 19, 2007, JCC-I/A issued the solicitation for RSSS for a one-year performance-based Indefinite Delivery Indefinite Quantity ("ID/IQ") contract with fixed price incentive fee task orders for security guard services for the Gulf Regional Division ("GRD") and the JCC-I/A. Under the solicitation, the Army seeks to procure RSSS for the GRD to support operations of the ROC, personnel security for GRD and the JCC-I/A staff, static guard services for GRD facilities and project sites, reconstruction liaison teams to evaluate security conditions and construction activities at construction sites and background check services on prospective Iraqi employees of JCC-I/A and GRD. AR, Tab 4.

Because the Army wanted its contractor to be incentivized to perform the demanding work required by this procurement – security to high-level officials of the United States and Iraq governments in a hostile environment – the Army selected the fixed price incentive fee contract type for this procurement. The RFP required offerors to propose incentive fee provisions. Those provisions meshed with the performance-based nature of the solicitation. In a performance-based acquisition, the contractor provides its own technical solution, as opposed to bidding against government specifications. The government therefore becomes heavily invested in the contractor's ability to succeed according to the contractor's own plan,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

and it is logical and reasonable for the government to require the contractor to adhere to performance incentives.

The RFP identified two evaluation factors: Technical and Price. Technical was further broken down into five subfactors: (1) Management Approach, (2) Technical Approach, (3) Past Experience, (4) Past Performance, and (5) Socioeconomic. AR, Tab 4 at 134; AR, Tab 3 at 67-68. The five Technical subfactors were of equal importance relative to each other. All of the Technical subfactors, when combined, were significantly more important than Price. The award was to be made to the offeror representing the best value to the government. AR, Tab 4 at 134; see also AR, Tab 3 at 67.

The Source Selection Plan ("SSP") stated that each member of the Source Selection Evaluation Board ("SSEB") would evaluate proposals in relation to each factor and subfactor before developing a consensus rating for each offeror. AR, Tab 3 at 82-83, 87. Each factor, excluding price, received a rating that the SSEB then used to determine an overall rating for the proposal. Each proposal was reviewed to determine "completeness, reasonableness and realism" of the offer. AR, Tab 4 at 139. The technical evaluation consisted of a color rating scheme as outlined in the SSP. AR, Tab 3 at 85-86.

**B. The Army Responds to Offerors' Pre-Proposal Questions and Confirms the Performance-Based Aspects of the Contract to be Awarded**

Erinys asserts that it was not required to propose incentive fee provisions. Erinys relies on RFP Section L.10.3.3 which states "the offeror is cautioned to complete all blanks to identify any CLIN [contract line item number] not priced as 'not separately price' or 'N/A' as applicable." AR, Tab 4 at 133. However, that RFP statement cannot be read in a vacuum. While offerors were permitted not to separately price some CLINs, offerors were not allowed



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

to jettison the incentive fee requirements. With regard to the price evaluation, the RFP expressly stated "price evaluations ***will analyze*** unit price, total proposed prices, ***performance incentive rates and maximum performance incentive amounts*** for the basic performance period and all option periods." AR, Tab 4 at 139. (emphasis added). Erinys neglects to explain how the agency could "analyze" the performance incentive rates and maximum performance incentive amounts if Erinys declined to bid them. Further, Erinys ignores the Army's pre-proposal instructions regarding alternative proposals. The Army repeatedly instructed offerors "if the contractor wants to submit an alternate proposal, they must submit one offer meeting the RFP requirements and another which does not conform to the RFP. Prices shall be submitted in the formats found in Section B, Tables B.1, B.2, B.3 and B.4." AR, Tab 9 at 508 (Answer 1).

The Army provided the following response to offeror questions, emphasizing that the solicitation is for a performance-based contract, and that any offeror that submits an alternate proposal not conforming to the RFP must submit a second proposal that does conform to the RFP:

> ***The Government have issued a solicitation for a Performance Based contract. The requirements are expressed in a Performance Work Statement.*** The Government have expressed the desired outcomes and expects the contractor to use their expert knowledge of the best practices in the industry to propose the best methods and most effective use of resources for accomplishing the outcomes. See Section L. Clause 52-215-1 Alternate II. ***If the contractor wants to submit an alternate proposal, they must submit one offer meeting the RFP requirements and another which does not conform to the RFP.*** Prices shall be submitted in the formats found in Section B, Tables B.1, B.2, B.3 and B.4.

AR, Tab 9 at 508 (Question and Answers 1, 2 and 5). (emphasis added).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### C. The Erinys Proposal Takes Exception to Mandatory RFP Requirements and Fails to Follow Solicitation Instructions

Erinys did not propose an incentive fee as required by RFP Section L.10.3.3. which states:

> Section B shall be submitted fully completed and error free. ***It shall contain the offeror's prices[,] performance incentive rates and maximum performance incentive amounts*** for the established Contract Line Item Numbers (CLINS) set forth in that section. The offeror is cautioned to complete all blanks to identify any CLIN not priced as "Not Separately Priced" or "N/A" as applicable.

AR, Tab 4 at 133 (Section L.10.3.3.). (emphasis added).

To the contrary, Erinys took express exception to this requirement:

[redacted]

AR, Tab 61 at 3633. (emphasis added).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**D. The Aegis Proposal Properly Explains Apparent Differences in the Aegis Technical and Cost Proposal**

Erinys asserts that the agency failed to perform any analysis to determine whether the offerors' proposed prices were consistent with their evaluated technical approaches. Complaint, ¶ 48. Thus, Erinys asserts:

> There is no evidence that the Agency performed any analysis to determine whether the offerors' proposed prices were consistent with their evaluated technical approaches. For example, one of the major flaws in the evaluation identified during *Erinys I*, [redacted]

Complaint, ¶ 48. Erinys made this allegation based on a government spread sheet that showed nothing of the sort. In fact, the [redacted] Erinys, in its Complaint, appears to confuse full time equivalent positions with productive labor hours. Aegis explained the distinction in its technical proposal as follows:

[redacted]

AR, Tab 16 at 1161 (Technical proposal at ¶ 2.3.1). This approach was fully consistent with the RFP and the pre-proposal questions and answers. Question and Answer 49 specifically stated that the FTE amounts were not the same as the quantities requested in Tables B.1 and B.2. AR, Tab 9 at 516 (Question and Answer 49-51). The FTEs in Aegis's technical



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

proposal correspond directly to Aegis's Table B pricing. AR, Tab 61 at 1161; Appendix, at 2, 7-8, Bonuccelli Decl., ¶¶ 3-4, Exhibit 2.

**E. First Competitive Range Determination**

The Army received seven proposals in response to the solicitation. After evaluating all proposals in accordance with the stated evaluation criteria, the Army determined that the competitive range would consist of two offerors: Aegis and ArmorGroup. AR, Tab 22 at 2407; AR, Tab 41 at 2855.

On April 5, 2007, the Army notified Erinys that it was excluded from the competitive range. AR, Tab 25.

**F. Erinys Protests to GAO and then the Court**

On April 9, 2007, Erinys protested its exclusion from the competitive range with the United States Government Accountability Office ("GAO"). AR, Tab 29.

On May 29, 2007, the Army provided to GAO notice of a related case involving the same procurement in the Court of Federal Claims ("COFC"), Brian X. Scott v. United States, No. 07-00216. AR, Tab 35. On May 31, 2007, the GAO dismissed the Erinys protest due to a GAO rule requiring dismissal "where the matter involved is the subject of litigation before a court of competent jurisdiction ...." 4 C.F.R. § 21.11; AR, Tab 36.

On June 1, 2007, Erinys filed a Complaint in the COFC protesting its exclusion from the competitive range. Appendix, at 13-45 ("Erinys I Complaint").

On June 1, 2007, the Court entered a temporary restraining order barring the agency from awarding the contract pending resolution of the Erinys protest.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### G. The Government Agrees to Take Corrective Action

On June 7, 2007, during a hearing on extension of the temporary restraining order, the government represented that the Army intended to take corrective action, by setting aside the initial competitive range determination and conducting a new evaluation and a second competitive range determination.

On June 11, 2007, the Court dismissed the Erinys protest based on the agency's agreement to undertake corrective action. AR, Tabs 38-39.

### H. The Government Reevaluates and Makes A New Competitive Range Determination

Following the June 7, 2007 hearing and the dismissal of the Complaint on June 11, 2007, JCC-I/A appointed a new contracting officer to conduct the second RSSS evaluation. AR, Tab 41 at 2791 (at ¶ 2).

[redacted] was appointed the Source Selection Authority ("SSA"). She serves as the Principal Assistant Responsible for Contracting-Iraq. [redacted] as the contracting officer. Neither individual was previously involved in the protested competitive range determination. AR, Tab 41 at 2792.

As part of the reevaluation, the agency conducted a new evaluation under all of the Price and Non-Price factors. The new contracting officer conducted a new price realism analysis. AR, Tab 41 at 2792 (¶ 6), at 2856-2901 (new price realism analysis), at 2902-04 (new price analysis report).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

On July 18, 2007, the SSA determined that the proposals submitted by [redacted] Erinys [redacted] were not among the most highly rated proposals. The SSA determined that proposals submitted by Aegis and ArmorGroup comprised the competitive range. AR, Tab 41 at 2855.

The competitive range determination includes the following table based on a summary of the evaluation ratings developed by the contracting officer and source selection evaluation team:

[redacted]

AR, Tab 41 at 2852.

Erinys was ranked [redacted] under the non-Price factors – behind Aegis, ArmorGroup [redacted]

Under the Price factor, the Erinys price was substantially higher than that of any other offeror. AR, Tabs 41 at 2869, 2873.

The offerors' proposals included extensive unit prices for labor categories designated in the RFP. Under any analysis, the Erinys unit prices were substantially higher than those of any other offeror. AR, Tab 41 at 2792 ("Erinys unit prices are approximately [redacted] higher across the board."), at 2792 ("The two contractors in the competitive range during the first



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

CRD, Aegis and ArmorGroup unit prices are significantly lower than the Erinys unit prices."). AR, Tab 20 at 2311, 2318.

### I. The New Evaluation Confirms Multiple Erinys Material Weaknesses and that Erinys's Price Was Substantially Higher Than Any Other Offeror

The SSA decided to [redacted] from the competitive range based on its relative technical standing and higher price. AR, Tab 41 at 2854. The SSA concluded:

> [redacted] had all ratings of [redacted] except a [redacted] in past experience. Their price is the [redacted] ighest price and there is little likelihood that [redacted] will be price competitive. [redacted] s not among the most highly rated proposals.

AR, Tab 41 at 2854.

The SSA excluded Erinys from the competitive range based on its substantially higher price. The SSA noted that Erinys offered the highest evaluated price. The SSA concluded:

> These ratings and a lower price would have placed Erinys in the competitive range[. H]owever, Erinys offered the highest price of all offers – more than [redacted] than the <u>average</u> of all offers – nearly double the price of all the offerors included in the competitive range. Furthermore, Erinys took exception to the required terms and conditions of the solicitation by refusing to propose price incentives. The services Erinys proposed are not among the most highly rated when compared with other offerors.

AR, Tab 41 at 2854. (emphasis in original).

Compared to Aegis and ArmorGroup, Erinys had a significant number of material weaknesses. Among other things, the Army found material weaknesses in the following areas:



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

- See also list summarizing weaknesses at AR, Tab 41 at 2854.

**ARGUMENT**

## I. STANDARD OF REVIEW

This Court reviews bid protest actions under the standards set forth in the Administrative Procedure Act ("APA"). Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). In particular, the Court must determine whether the agency's actions were arbitrary, capricious, an abuse of discretion, or



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). A bid award may be set aside "if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa, 238 F.3d at 1332 (citations omitted).

In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis.'" Impresa, 238 F.3d at 1333 (citing Saratoga Dev. Corp. v. United States, 21 F.3d 445, 456 (D.C. Cir. 1994)). Courts have recognized that contracting officials may properly exercise wide discretion in their application of procurement regulations. See Impresa, 238 F.3d at 1332 (citations omitted); Electro-Methods, Inc. v. United States, 7 Cl. Ct. 755, 762 (1985). In this regard, the Court cannot substitute its judgment for that of the agency, even if reasonable minds could reach differing conclusions. CRC Marine Servs., Inc. v. United States, 41 Fed. Cl. 66, 83 (1998). "This deference is particularly great when a negotiated procurement is involved and is greater still when the procurement is a 'best value' procurement." Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320 (2000) (citations omitted); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("As the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion ... the relative merit of competing proposals is primarily a matter of administrative discretion."). (citations omitted). As long as a rational basis is articulated and relevant factors are considered, the agency's action must be upheld. Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281 (1974).

Moreover, when a protester asserts a violation of regulation or procedure, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

regulations.'" Impresa, 238 F.3d at 1324 (citing Kentron Hawaii, Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973); Latecoere Int'l, Inc. v. United States Dep't of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994)).

Prejudice is a necessary element of any valid protest. Southern Foods, Inc. v. United States, 76 Fed. Cl. 769 (2007) (citing Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996)). Thus, "to prevail in a protest, a protester must show not only a significant error in the procurement process, but also that the error prejudiced it." Data General Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996) (citing cases); accord Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996) ; Cleveland Telecommunications Corp. v. Goldin, 43 F.3d 655, 659 (Fed. Cir. 1994).

To prevail in its protest, Erinys must show that it was rated at least as high or higher than ArmorGroup, the lower rated offeror of the two companies included in the competitive range. Erinys's proposed unit prices, however, were substantially higher than ArmorGroup's. ArmorGroup also had higher ratings than Erinys in the Management and Past Performance subfactors. All of the Technical subfactors are of equal importance relative to each other and are significantly more important than Price when taken together. Accordingly, Erinys, to establish prejudice, must demonstrate that the Army made so many material prejudicial errors that the Erinys actual evaluated price and ratings should have been the same as or greater than ArmorGroup. In other words, it is insufficient for Erinys to show that the evaluation of Price, Management Approach ***or*** Past Performance were flawed: Erinys must establish that ***all three*** evaluations were ***prejudicially*** flawed.

Moreover, Erinys was not next in line for inclusion in the competitive range. Instead, Erinys was ranked [redacted] Thus, Erinys would need to displace [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Otherwise, if there were to be any basis for expanding the competitive range to three (which again is beyond the Court's power), the privilege would go t[redacted]not Erinys. [redacted] rated higher than Erinys under the Management Approach and Past Performance subfactors an[redacted]unit prices were substantially lower than Erinys's unit prices. Appendix, at 12, Bonuccelli Decl., Exhibit 4, p. 2[redacted]substantially lower than Erinys unit prices).

## II. THE ARMY PROPERLY EXCLUDED ERINYS FROM THE COMPETITIVE RANGE

### A. The FAR Standard

Under the FAR, the contracting officer must include in the competitive range "all of the most highly rated proposals." FAR 15.306(c)(1) (2007). This standard replaced an earlier, less discretionary standard under which agencies had to include "all proposals that have a reasonable chance of being selected for award." FAR 15.609(a) (1997). Under that more relaxed standard, GAO held there was a presumption in favor of including marginal proposals (although GAO rarely recommended inclusion). See, e.g., Everpure, Inc., B-226395.2-.3, September 20, 1988, 88-2 CPD ¶ 264 (exclusion of higher priced proposal sustained even though only one offeror left in competitive range); Sys. Integrated, B-225055, February 4, 1987, 87-2 CPD ¶ 114 (protester's proposal that was priced 30% higher and offered no technical advantages was properly excluded).

In September 1997, the FAR Part 15 Rewrite substantially changed the standard for establishing the competitive range. The FAR Rewrite gave significantly more latitude to contracting officers, permitting them to narrow the competitive range. Instead of the previous approach of "when in doubt put them in," the new rule became "when in doubt



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

leave them out." FAR 15.609(a)(1997); see also Ralph C. Nash and John Cibinic, 9 Nash & Cibinic Report at Dateline December 1995.[1]

In its protest filings before GAO and this Court, Erinys ignores the governing FAR competitive range standard. Erinys cannot establish that its proposal is among the "most highly rated." In fact, of the seven offerors, it was highest in Price and [redacted] in the non-Price factors.

### B. The Development of the FAR Part 15 Rewrite Confirms that the Revised Regulation Gave the Agencies Discretion to Sharply Narrow the Number of Proposals Eligible for Inclusion in the Competitive Range

Prior to the September 1997 revision to FAR Part 15, the proposals that had a "reasonable chance of being selected for award" made up the competitive range:

> (a) The contracting officer shall determine which proposals are in the competitive range for the purpose of conducting written or oral discussion (see 15.610(b)). The competitive range shall be determined on the basis of cost or price and other factors that were stated in the solicitation and shall ***include all proposals that have a reasonable chance of being selected for award.*** When there is doubt as to whether a proposal is in the competitive range, the proposal should be included.

FAR 15.609(a)(1997) . (emphasis added).

[1] For further background, see also John S. Pachter, Jonathan D. Shaffer, Christina M. Pirrello, "The FAR Part 15 Rewrite," 98-5 Briefing Papers (April 1998) (characterizing the new standard as "when in doubt, leave them out"); John S. Pachter, Jonathan D. Shaffer, Christina M. Pirrello, "Source Selection Provisions of the FAR Part 15 Rewrite – A Train Wreck Avoided," 39 Government Contractor ¶ 578 (December 10, 1997); Ralph C. Nash and John Cibinic, "The FAR Part 15 Rewrite: A Final Scorecard," 11 N&CR ¶ 63, at 183-189 (December 1997).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

After the 1997 revision to FAR 15.306, the competitive range is now comprised of "the most highly rated proposals":

> (1) Agencies shall evaluate all proposals in accordance with 15.305(a), and, if discussions are to be conducted, establish the competitive range. Based on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of ***the most highly rated proposals***, unless the range is further reduced for purposes of efficiency pursuant to paragraph (c)(2) of this section.

FAR 15.306 (c)(1)(2007). (emphasis added).

The stated purpose of the FAR 15.306(a) rewrite was as follows:

> We also note that comments received from Government agencies indicate that award is nearly always made to one of the three most highly rated offerors in the competitive range. Therefore, including an offeror that is not most highly rated in the competitive range would not likely impact the final award decision. ***This final rule ensures that offerors with little probability of success are advised early on that their competitive position does not merit additional expense in a largely futile attempt to secure the contract.***

62 Fed. Reg. 51,224, 51,226 (September 30, 1997). (emphasis added).

The initial draft of the rewrite would have (a) permitted the government to estimate the size of the competitive range in advance, (b) established further guidance for a second standard for limiting the competitive range and (c) provided that contracting officers could state a pre-established number of competitive range offerors in the RFP. 61 Fed. Reg. 48380, 48389 (September 12, 1996); Clinger-Cohen Act of 1996, P.L. 104-106, at § 4103. Commentators persuaded the drafters that neither a fixed number nor an advance estimate was consistent with the statutory mandate that the contracting officer may limit the number of proposals in the competitive range to the "greatest number that will permit an efficient



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

competition among the offerors ***rated most highly*** in accordance with [the solicitation] criteria." 10 U.S.C. § 2305(b)(4)(B); 41 U.S.C. § 253(b)(d)(2) (as amended by P.L. 104-106, § 4103, 110 Stat. 186 (Feb. 10, 1996). (emphasis added).

Under the rewrite, an agency must evaluate proposals in accordance with the evaluation factors listed in the solicitation, and where discussions are to be held, the agency must establish a competitive range, based on the ratings of each proposal against all evaluation criteria, that is "comprised of all the most highly rated proposals, unless the range is further reduced for reasons of efficiency." FAR 15.306(c)(1). See FAR 15.305(a). The final rule struck a balance between the government's need for flexibility and efficiency and the congressionally-mandated requirements of open competition and equal treatment.

### C. The Determination of the Competitive Range Under the Revised Standard Reinforces Agency Judgment and Discretion

Contracting agencies are not required to retain a proposal in the competitive range where the proposal is not among the most highly rated. Gov't Telecommunications, Inc., B-299542.2, June 21, 2007, 2007 CPD ¶ --, 2007 U.S. Comp. Gen. LEXIS 127 ("GTI") at 9 (citing SDS Petroleum Prods., Inc., B-280430, September 1, 1998, 98-2 CPD ¶ 59 at 5-6).

In GTI, supra, GAO held that GTI's challenge to its exclusion from the competitive range reflected "a fundamental misunderstanding of the proposal process." GAO stated (1) it is an offeror's "responsibility to submit a well-written proposal . . . which clearly demonstrates compliance with the solicitation requirements . . . " Id. (citing CACI Techs., Inc., B-296946, October 27, 2005, 2005 CPD ¶ 198 at 5), and (2) an offeror is "responsible for affirmatively demonstrating the merits of its proposal and risks the rejection of its proposal if it fails to do so" Id. (citing HDL Research Lab, Inc., B-294959, December 21,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

2004, 2005 CPD ¶ 8 at 5). The same is true here. Erinys not only failed to submit a compliant well-written proposal; its bid protest glaringly reflects "a fundamental misunderstanding of the proposal process." With regard to Price, the RFP expressly warned offerors

> ***to reflect the best possible price, since less than the best potential prices could result in the exclusion of the proposal from further consideration.***

AR, Tab 4 at 134 (Section M.3.2). (emphasis added).

It is "well established that the scoring of proposals within the competitive range falls within the discretion of the procurement officials." Tech. Sys. Inc. v. United States, 50 Fed. Cl. 216, 222 (2001) (citations omitted). Numerous GAO cases similarly hold that the determination of whether a proposal is in the competitive range is principally a matter within the discretion of the procuring agency. Dismas Charities, Inc., B-284754, May 22, 2000, 2000 CPD ¶ 84; see also TekStar, Inc., B-295444, B-295444.2, February 18, 2005, 2005 CPD ¶ 53. The reason is that agencies are responsible for defining their needs and for deciding the best method for meeting them.

Further, GAO will limit its review of an agency's competitive range determination to reasonableness and consistency with (1) the criteria and language of the solicitation and (2) applicable statutes and regulations. Novavax, Inc., B-286167, B-286167.2, December 4, 2000, 2000 CPD ¶ 202.

> In reviewing protests of competitive range determinations, we will not reevaluate proposals; rather we will review the record to ensure that the evaluation and competitive range determination were reasonable and consistent with the terms of the solicitation. . . . A protester's disagreement with the agency does not render the evaluation unreasonable.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Computer & Hi-Tech Mgmt., Inc., B-203225.4, March 2, 2004, 2004 CPD ¶ 45; see also Matrix Gen., Inc., B-282192, June 10, 1999, 99-1 CPD ¶ 108 (same) (citations omitted); Americom Gov't Servs., Inc., B-292242, August 1, 2003, 2003 CPD ¶ 163 at 4 (protester's mere disagreement with an agency's competitive range evaluation does not establish that the evaluation was unreasonable). These GAO decisions are consistent with this Court's scope of review.

If an agency determines an offeror's proposal is unacceptable under any of the evaluation criteria for failing to conform to a material solicitation requirement, the agency may deem that proposal unacceptable. GTI, supra (citing Stewart Distribs., B-298975, January 17, 2007, 2007 CPD ¶ 27 at 3-4; Nat'l Shower Express, Inc.; Rickaby Fire Support, B-293970, B-293970.2, July 15, 2004, 2004 CPD ¶ 140 at 4-5).

**D. Erinys's Proposal Is Not One of the "Most Highly Rated"**

The Erinys proposal was properly excluded from the competitive range because it was not one of the "most highly rated proposals." Aegis and ArmorGroup offered the two most highly rated proposals and were included in the competitive range. AR, Tab 41 at 2853. Aegis received higher ratings than Erinys in each subfactor and offered a price that was close to half of Erinys's price. AR, Tab 41 at 2852. ArmorGroup rated higher than Erinys for the Management Approach and Past Experience subfactors and was rated equal with Erinys in all other categories. Again, Erinys's price was almost double ArmorGroup's price. Id.

Erinys is not even next in line. [redacted] with a substantially lower price than Erinys and higher ratings in Management and Past Performance.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Moreover, the price proposal evaluation concluded that Erinys's "proposed prices appear to indicate a lack of understanding of prevailing market prices based on comparison to proposed prices received in response to this solicitation." AR, Tab 41 at 2833. Erinys's prices were "unreasonably high" when compared to the other proposed prices in response to the solicitation. Id. at 2834-35, 2854. In addition, Erinys took exception to the solicitation requirement to propose an incentive fee rate. In doing so, Erinys proposes through its high prices to recover a bonus fee whether or not it would be so entitled under the incentive provisions. "Where a proposal is technically unacceptable as submitted and would require major revisions to become acceptable, exclusion from the competitive range is generally permissible." See GTI, supra at 9 (citing CMC & Maint., Inc., B-290152, June 24, 2002, 2002 CPD ¶ 107 at 2).

**E. Agencies are Permitted to Exclude an Offeror from the Competitive Range Based on Price Considerations**

Even if Erinys were to prevail on every argument regarding the non-Price factors, it still would not among the most highly rated offerors. Erinys's exceedingly high price put Erinys outside the competitive range regardless of its ratings in other categories. See GTI supra, at 9 (noting that protester failed to mention that its price was one-third higher than the offerors in the competitive range). Even under the older, broader standard, GAO repeatedly held that an agency could exclude an offeror from the competitive range where the offeror's price was substantially higher than that of other offerors. See, e.g., Sys. Integrated, B-225055, February 4, 1987, 87-2 CPD ¶ 114 (30% higher proposed costs); Jack Faucett Assocs., B-224414, September 16, 1986, 86-2 CPD ¶ 310 (35% higher proposed costs).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

As stated above, the RFP in this case warned offerors

> ***to reflect the best possible price, since less than the best potential prices could result in the exclusion of the proposal from further consideration.***

AR, Tab 4 at 134 (Section M.3.2). (emphasis added). Moreover, the RFP specifically cautioned:

> Price will also be a factor in establishing the competitive range prior to discussions (if held) and in making the best value determination.

AR, Tab 4 at 139 (RFP Price Evaluation Factors). As a result, Erinys has no basis to object to the Army's consideration of price in excluding Erinys from the competitive range.

Moreover, GAO has upheld competitive range exclusions and price realism analyses where there were significant differences between the offerors' proposed prices. See, e.g., Grove Resource, B-296228, B-296228.2, July 1, 2005, 2005 CPD ¶ 133 at 6-7 (40% difference between protester and awardee prices); Telos Corp., B-279493.3, July 27, 1998, 98-2 CPD ¶ 30 (76% higher probable cost than other offerors).

**F. The Competitive Range Determination Was Based Solely on Evaluation of Proposals and did Not Consider Post-Competitive Range Discussions**

Erinys erroneously asserts that the competitive range determination considered information obtained during discussions between the Army and Aegis and ArmorGroup and that, accordingly, Erinys was not treated fairly. Complaint, ¶¶ 31, 81-84. The only discussions conducted by the Army with the offerors took place ***after*** the competitive range was established, as permitted by FAR 15.306. The July 18, 2007 competitive range determination was based solely on proposal evaluation materials and did not consider



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

information that any offeror provided through discussions or other communications before establishment of the competitive range. AR, Tab 41 at 2791 (¶ 2).

Before the Army's agreement to take corrective action and the dismissal of Erinys I, the Army had conducted discussions with Aegis and ArmorGroup after establishment of the competitive range. These discussions were authorized by FAR 15.306. In accordance with the Army's agreement to take corrective action, the Army did not consider these discussions during its reevaluation and redetermination of the competitive range. AR, Tab 41 at 2791; Complaint, at Exhibit 2 (excerpt of June 7, 2007 Hearing Transcript regarding discussion of Army's corrective action).

Erinys, however, asserts that the agency has not afforded Erinys "an opportunity to revise its proposal." Id. at ¶ 32. This leap of logic is another Erinys attempt to insinuate itself into the competitive range. It also betrays a misunderstanding of the process. See Argument II, infra. Discussions are only conducted with offerors in the competitive range, who are then given an opportunity to revise their proposals. FAR 15.306(d)(1)("Discussions ... must be conducted by the contracting officer with each offeror within the competitive range.") An agency's conduct of discussions with offerors in the competitive range does not confer on excluded offerors who elect to file protests an opportunity to revise their proposals.

The pre-corrective action discussions held with Aegis and ArmorGroup, moreover, did not affect the second competitive range determination. The July 18, 2007 competitive range determination was based solely on the evaluation of the offerors' proposals. The strengths, weaknesses and deficiencies identified by the evaluators were included in the competitive range determination. Nothing that occurred during discussions had any effect



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

on the evaluation. Compare AR, Tab 22 at 2382 and AR, Tab 41 at 2804. The SSEB rated "all offers based upon the evaluation set forth in the solicitation and the procedures detailed in the SSP." AR, Tab 41 at 2794 (¶ 20). The findings of the SSEB were re-evaluated in the second competitive range determination in response to Erinys's initial complaint (Appendix, 13-45) filed in June 2007. Id. Finally, [redacted] the original Source Selection Authority, was replaced for the second competitive range determination by [redacted] See AR, Tab 22 at 2407; AR, Tab 41 at 2855.[2]

### G. Erinys Was Not Entitled to Pre-Competitive Range Communications

In its Complaint, Erinys effectively argues that it would have been included in the competitive range if only the Army had conducted pre-competitive range communications with Erinys so it could revise its proposal to make it one of the most highly rated proposals. This approach is contrary to the FAR requirements. Agencies are permitted to conduct pre-competitive range communications only in certain limited circumstances. FAR 15.306(b). See, e.g., U.S. Facilities, Inc., B-293029, B-293029.2, January 14, 2004, 2004 CPD ¶ 17 at 14 (pre-competitive range determination allowed where it appeared one offeror's price was based on an incorrect multiplier); Kentucky Bridge and Dam, Inc., B-235806, July 17, 1989, 89-2 CPD ¶ 56 at 3 (correctible mistakes include an obvious misplacement of a decimal point or the use of an obviously incorrect discount).

---

[2] Only in rare situations does GAO recommend replacing contracting officials to assure fairness. See, e.g., University Research, B-294358.8, B-294358.9, B-294358.10, April 6, 2006, 2006 CPD ¶ 61. Here, Erinys by coincidence obtained the benefit of a new Source Selection Authority without requesting a replacement and without the need to meet the heavy burden required to obtain that type of relief.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

As in GTI, Erinys "fails to identify any requirement that the agency provide the offeror with the opportunity to clarify its proposal prior to making the competitive range determination." GTI, supra, at 7. Here, Erinys improperly faults the Army for not conducting discussions ***before*** establishment of the competitive range. See Lockheed Martin Simulation, Training & Support, B-292836.8 et al., November 24, 2004, 2005 CPD ¶ 27 at 8 (noting the differences between clarifications and discussions where curing a significant weakness or deficiency would involve material changes to the proposal and hence constitute discussions). "[W]hether to seek clarifications is a discretionary decision on the part of the contracting agency, not a right that the offeror possesses; any decision not to seek clarifications here clearly was well within the agency's discretion." GTI, supra, at 8.

## III. THIS COURT'S REVIEW MUST FOCUS ON THE PROPRIETY OF THE COMPETITIVE RANGE DETERMINATION, NOT THE SCOPE OF INFORMATION PROVIDED DURING THE DEBRIEFING

Erinys's Complaint focuses on the Army's July 22, 2007 debriefing letter. Erinys asserts that the letter: (1) did not provide meaningful information about Erinys's ratings (¶ 33); (2) did not provide information about the evaluations of other proposals (¶ 34); and (3) fails to identify which proposal elements prevented the agency from rating Erinys a "Blue" in the given subfactor (¶ 35).

The question for the Court, however, is whether the Army properly excluded Erinys from the competitive range. AR, Tab 41. Any alleged inadequacy in the Army's July 22, 2007 letter is immaterial and forms no basis for protest.

An agency's failure to mention a particular weakness during a debriefing does not provide any basis to question the adequacy of an evaluation that is otherwise substantiated by the record, as it is here. See Ideal Elec. Sec. Co., Inc., B-283398, November 10, 1999,



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

99-2 CPD ¶ 87. An agency is only required to furnish an offeror with reasons why its proposal was rejected. "There is no requirement that an agency answer questions concerning the evaluation to an offeror's satisfaction." Trellclean, U.S.A., Inc., B-213227.2, June 25, 1984, 84-1 CPD ¶ 661. The evaluation record governs, not the debriefing. Del-Jen Int'l Corp., B-297960, May 5, 2006, 2006 CPD ¶ 81 ("[GAO] is primarily concerned with the evaluation record, not comments made during a debriefing, since a debriefing is only an explanation of the agency's evaluation and source selection decision, not the evaluation or decision itself.") (citing EER Sys., Inc., B-290971.3, B-290971.6, October 23, 2002, 2002 CPD ¶ 186; Tulane Univ., B-259912, April 21, 1995, 95-1 CPD ¶ 210).

Because no award had been made, it would have been improper for the Army to disclose to Erinys its relative price standing or the proposed prices for Aegis and the ArmorGroup. FAR 15.306(e)(3). That information is available only at a post-award debriefing. See FAR 15.505(f)(6); FAR 15.506(e)(3).

## IV. THE ARMY PROPERLY EVALUATED PRICE

### A. The RFP Requirements

The RFP stated price proposals would be evaluated for completeness, reasonableness and realism:

> PRICE
> Evaluation. Price proposals will be evaluated for completeness, reasonableness and realism. ***Price evaluations will analyze unit prices, total proposed prices, performance incentive rates and maximum performance incentive amounts, for the basic performance period and all option periods***. Evaluating options shall not obligate the Government to exercise such options. Price realism analysis will be a separate review and evaluation of the proposed price to determine the degree to which an offeror proposes realistic prices. During the price realism analysis the Government may



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> adjust an offeror's offered price to increase or decrease unrealistic prices.
>
> (1) Completeness: To be complete, the offeror must provide all the data that is necessary to support the proposal. The Government will evaluated the extent to which the price proposal complies with the content and format requirements set forth in this solicitation and exhibits traceability of estimates.
>
> (2) Reasonableness: The offeror's proposed prices will be evaluated to determine any unreasonably high or low prices in relation to the offeror's technical proposal.
>
> (3) Realism: Proposed prices will be evaluated to determine if the prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the unique methods of performance and materials described in the offeror's proposal. If an Offeror's price is evaluated as unrealistically low or high compared to the anticipated price of performance and/or the offeror fails to recognize and/or mitigate management, technical, schedule, and price risks, the Government will reflect the inherent findings, risks, and associated price impacts in the Price Realism Analysis as well as in the appropriate Factor within the Technical proposal. A proposal in which prices proposed are unrealistically low for the effort proposed may cause that proposal to no longer be considered for award.
>
> The Government will evaluate price proposals to determine whether the offered price reflects a sufficient understanding of the contract requirements and the risk inherent in the offeror's approach. Proposals found to have an unrealistic price may be deemed to be unacceptable and may not receive further consideration. Price will also be a factor in establishing the competitive range prior to discussions (if held) and in making the final best value determination for award.

AR, Tab 4 at 139. (emphasis added).

The RFP also urged offerors:

> ***to reflect their best possible price, since less than the best potential prices could result in the exclusion of the proposal from further consideration.***



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AR, Tab 4 at 134 (Section M.3.2). (emphasis added).

The RFP specifically warned offerors:

> Price will also be a factor in establishing the competitive range prior to discussions (if held) and in making the best value determination.

AR, Tab 4 at 139 (RFP Price Evaluation Factors).

**B. Agencies Have Significant Discretion in Evaluating Price and Price Realism; in a Fixed Price Contract, the Risk is on the Contractor, Not the Agency**

An agency has substantial discretion in conducting a price analysis. See, e.g., Labat-Anderson, Inc. v. United States, 50 Fed. Cl. 99, 106 (2001). Further, the Court limits its review "to determining whether it was reasonable and consistent with the provisions of the solicitation." Info. Sciences Corp. v. United States, 73 Fed. Cl. 70, 77 (2006) (citing Puglia Eng'g of Cal., Inc., B-297413, January 20, 2006, CPD ¶ 33). GAO has repeatedly recognized that the procuring agency is free to determine the nature and scope of its price realism analysis and is not required to conduct an in-depth analysis. See,e.g., Grove Resource, B-296228, B-296228.2, July 1, 2005, 2005 CPD ¶ 133 at 6-7; Cardinal Scientific, Inc., B-270309, February 12, 1996, 96-1 CPD ¶ 70 at 4; PHP Healthcare, B-251933, May 13, 1993, 93-1 CPD ¶ 381 at 5. Consistent with that principle, GAO has held that an agency can rely on the price analysis techniques in FAR 15.404-1(b), including, among other things, adequate price competition, in evaluating the realism of proposed prices. See, e.g., Acepex Mgmt., B-279173.5, July 22, 1998, 98-2 CPD ¶ 128 at 7 (price competition and comparison with Independent Government Cost Estimate); PHP Healthcare, B-251933, May 13, 1993, 93-1 CPD ¶ 381 at 5-6 (same).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**C. The Army Properly Took into Account Erinys's Substantially Higher Unit Prices**

This Court has followed GAO's guidance concerning the methods an agency can use when engaging in a price realism analysis. In Info. Sciences Corp. v. United States, the Court quoted the following language from a GAO decision:

> The record shows that the agency evaluated the realism of an offeror's price proposal by comparing prices against one another and the independent government estimate, *reviewing each offeror's cost proposal for compliance with the terms of the solicitation,* for mathematical accuracy, and comparing pricing data with the technical proposal. . . . In our view, the agency reasonably satisfied its obligation under the FAR and RFP to perform a price realism evaluation *and [the protester's] mere disagreement with how the agency conducted its price realism analysis for these requirements and the agency's ultimate conclusion that [the awardee's] prices were realistic does not establish that the agency's evaluation of the realism of proposed prices was unreasonable.*

73 Fed. Cl. 70, 77 (2006) (quoting Burns & Roe Servs., Corp., B-296355, July 27, 2005, 2005 CPD ¶ 150). (emphasis in original).

The administrative record demonstrates that an appropriate price analysis was conducted under the terms of the solicitation. See AR, Tab 21 (SSEB's March 28, 2007 consensus report, including price); AR, Tab 20 (first evaluation price analysis worksheet); AR, Tab 22 (first evaluation competitive range determination); AR, Tab 44 (second evaluation SSEB Consensus Proposal Rating Report from Chairman); AR, Tab 41 at 2569-2901 (second evaluation, competitive range determination and final price analysis worksheet). The Army analyzed unit prices, total proposed prices, performance incentive rates, and maximum performance incentive amounts for the basic performance period and all option periods in each proposal. AR, Tab 20 (first evaluation price analysis worksheet);



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AR, Tab 41 (second evaluation price analysis worksheet); see also AR, Tab 33 at 2645-46; AR, Tab 22 (first evaluation, SSA stating price was considered in the competitive range determination); AR, Tab 41 (second evaluation at price analysis report, SSA stating price was considered in the competitive range determination).

Erinys asserts "the agency simply accepted each offeror's total proposed ceiling price without any attempt to determine if the amounts proposed represent an apples-to-apples comparison against common baselines so the agency's conclusions are irrational." Complaint, ¶ 49. In fact, the agency ensured an apples-to-apples comparison by conducting an analysis of the offerors' ***unit prices***. AR, Tab 41 at 2856-2904. Since the government's actual requirements are unknown, the agency reasonably concluded that comparison of unit prices was fair and reasonable.

The RFP did not include a sample task or other method to compare offerors' prices, other than unit prices. Erinys did not protest the terms of the solicitation before the proposal due date and it is too late for Erinys to complain that the solicitation did not provide for another price evaluation technique. Blue & Gold Fleet, LP v. United States and Hornblower Yachts, Inc., supra. The RFP expressly stated that the price analysis would focus on unit prices, AR, Tab 4 at 139. Given that the offerors' proposals were based on firm fixed unit prices for fixed labor categories, it was rational and consistent for the agency to compare unit prices.

A comparison of the offerors' unit prices demonstrates that the Erinys price was substantially higher than any other offeror and substantially higher than the offerors included in the competitive range. Appendix, at 3, 4, 11-12, Bonuccelli Decl., ¶¶ 6, 9 and Exhibit 4, pp. 1-2.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

### E. Erinys Improperly Proposed to Change the Contract Type

The RFP called for the award of a performance-based fixed price incentive fee contract. Performance-based contracting is generally described as follows:

> Performance-based Contracting, now called Performance-based Acquisition ("PBA"), is an approach to obtaining innovative solutions by focusing on mission outcomes rather than dictating the manner in which the contractor's work is to be done. Those outcomes are then measured ***and the contractor compensated*** on the basis of whether or not the outcomes are achieved.

Report of the Acquisition Advisory Panel to the Office of Federal Procurement Policy and the United States Congress, January 2007, Appendix, at 46-47. (emphasis added). Here, the incentive fee provisions of the proposed contract were a critical and integral feature of the performance-based contract sought by the Army. The incentive fee provides additional compensation to the contractor based on whether the outcomes set forth in the RFP are achieved. Removing the incentive fee provisions from the contract would undermine the entire performance-based nature of the effort.

Erinys improperly took exception to the performance-based fee requirements without submitting an alternate compliant proposal. Instead of filing a timely protest against the terms of the RFP or submitting an alternate compliant proposal, Erinys took exception in its non-compliant proposal and [redacted] This Erinys proposal approach violated the agency's pre-proposal instructions to offerors. AR, Tab 9 at 508 (Question and Answer 1-2).

For this extraordinarily demanding work, involving the safeguarding of high level officials in a war zone, the Army included a financial incentive for high performance. Performance-based acquisition allows an agency to focus on mission outcomes rather than



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

dictating the manner in which a contractor performs his work. The mission outcome is measured and the contractor compensated based on whether the outcome is achieved. By not proposing incentive fees as required, Erinys deprived the agency of its leverage if performance levels fall. That performance incentive was featured several times in the RFP and was mentioned in the evaluation factors. See, e.g., AR, Tab 4 at Sections H.10 (Risk Incentive Plan), L.10.3 (price proposal), M.4 (price evaluation).

With its high prices, Erinys would award itself a performance bonus at the front end, regardless of the quality of service provided, and regardless of whether Erinys had earned the bonus fee through performance incentives.

Erinys also erroneously focuses on the CLINs. The RFP permitted offerors to propose some CLINs as not separately priced or not applicable ("N/A"). However, the incentive fee information was separately required by Section M. The RFP said the Army would evaluate incentive fees. AR, Tab 4 at 139. Erinys improperly took exception to an integral requirement, the importance of which was confirmed in the Section M evaluation factors. This alone made Erinys ineligible for inclusion in the competitive range.

In any event, even if the incentive fee requirements were not mandatory, Erinys was not prejudiced. Erinys could not be deemed one of the most highly rated offerors in light of its non-competitive unit prices.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## CONCLUSION

The motions for judgment on the administrative record filed by the government and Aegis should be granted, and Erinys's Complaint should be dismissed.

Respectfully submitted,

Date: August 10, 2007

By: /s/ John S. Pachter
John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# APPENDIX

# Appendix pages 1-12
# Redacted In Their Entirety

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BID PROTEST

**FILED UNDER SEAL PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER**

ERINYS IRAQ LTD.,
Baghdad Int'l Airport, Free Trade Zone
Baghdad, Iraq

Plaintiff,

v.

UNITED STATES,

Defendant.

No. ____________

Judge __________

**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF**

**NATURE OF THE CASE**

1. Erinys Iraq Ltd. ("Erinys") brings this action because the Joint Contracting Command-Iraq/Afghanistan ("JCC-I/A" or "the Agency") improperly excluded Erinys from the competitive range for award of the Reconstruction Security Support Services Contract ("RSSS") under Request for Proposals No. W91GXZ-07-R-0004 (the "RFP").

2. Furthermore, the JCC-I/A has stated its intent to award the RSSS contract to another offeror on Saturday, June 2, 2007. See Exhibit 1 to

The Memorandum in Support of Erinys's Motion for TRO and/or Preliminary Injunction.

3. The exclusion of Erinys from the competitive range and the award of the RSSS contract to another offeror are violations of United States ("U.S.") laws and regulations, Iraqi laws and regulations, and the RFP requirements, with significant potential harm to U.S. policy and goodwill in Iraq.

**JURISDICTION**

4. This is a protest action by an interested party "objecting . . . to a proposed award or the award of a contract" and alleging a "violation of statute or regulation in connection with a procurement or proposed procurement" by a federal agency. This Court has jurisdiction over this protest pursuant to 28 U.S.C. §§ 1491(a) and (b) (2000).

**PARTIES**

5. The Plaintiff, Erinys, is a limited company incorporated under [redacted] with headquarters in Baghdad, Iraq. If the requested relief is granted, Erinys would be in the competitive range for award of the contract. Erinys, therefore, has standing to pursue this action.

6. The Defendant, the United States of America, has acted through the Joint Contracting Command-Iraq/Afghanistan, F&T Sector, Baghdad,

Iraq, APO AE 09348. Army Lieutenant Colonel Mark I. Wade is the Contracting Officer responsible for the procurement. He recently replaced Ms. JoAnn M. Townley, who previously served as the Contracting Officer.

## PROCEDURAL HISTORY

7. On April 9, 2007, Erinys filed a bid protest concerning the same RFP at the U.S. Government Accountability Office ("GAO"). The GAO assigned number B-299524.2 to Erinys's GAO bid protest.

8. On May 21, 2007, the Agency filed an Agency Report with the GAO for B-299524.2. Pursuant to GAO rules, Erinys was required to submit Comments to the Agency Report and any supplemental bid protest grounds no later than 5:30 p.m. on May 31, 2007.

9. On May 29, 2007, the Agency notified Erinys than the RFP is also concurrently being challenged by Brian X. Scott at the Court of Federal Claims ("COFC") under case number 1:07-cv-00216-CCM.

10. On the afternoon of May 30, 2007, the GAO conducted a conference call to inform Erinys and the Army that it may be inclined to dismiss B-299524.2 under rule 21.11(b) of its bid protest regulations (4 C.F.R. § 21.11(b)), because, "the matter involved is the subject of litigation before . . . a court of competent jurisdiction."

11. During that same conference call on May 30, 2007, the undersigned asked the Agency counsel, Major Christopher Krafchek, how

close the Agency was to making award of the contract, because once the GAO dismissal occurred, the automatic stay of contract award would be lifted, so the undersigned needed to understand whether there were exigent circumstances relating to the timing of the dismissal. Major Krafcheck affirmatively stated that the Agency had not proceeded very far with the evaluation, because of the automatic stay at GAO, so they were not close to awarding the contract if the GAO protest was dismissed. Based on that answer, the undersigned informed the GAO that, if the GAO was inclined to dismiss the protest in deference to the Court, the dismissal should occur as soon as possible to avoid the May 31st 5:30 p.m. deadline for filing supplemental protests. The GAO agreed.

12. At 10:30 a.m. on May 31, 2007, the GAO informed Erinys and the Army that it had decided to dismiss the GAO bid protest for the reasons stated above. GAO formally dismissed Erinys's protest at GAO at approximately 12:30 p.m. that same day.

13. Approximately one hour after the GAO's dismissal of Erinys's protest, Major Krafchek's superior, Mr. Ray Saunders, informed Erinys that, notwithstanding Major Krafchek's statements to the contrary, the Agency intended to make award of the RSSS Contract on Saturday, June 2. The award will occur in Iraq, which is 8 hours ahead of Eastern Standard Time.

## STATEMENT OF THE CASE

### The RFP

14. Erinys is submitting the Agency Report that was filed with the GAO on May 21, 2007. The citations to the Agency Report, contained throughout this document, are to the documents contained in that Agency Report ("AR").

15. On January 19, 2007, JCC-I/A issued the RFP under Federal Acquisition Regulations ("FAR") Part 15 for security services supporting operations and projects by the Gulf Region Division of the U.S. Army Corps of Engineers ("GRD") throughout Iraq. Pursuant to the RFP, the Government is to award one (1) indefinite delivery/indefinite quantity ("ID/IQ") type contract. AR Tab 6 (RFP), § B.1, at 6. The minimum guaranteed amount under this contract is $3,000,000 with a maximum amount not to exceed $475,000,000 for the base and option periods. The Contracting Officer will execute and issue Task Orders using the prices to be negotiated in Tables B.1 and B.2 of the RFP.

16. The RFP's Performance Work Statement ("PWS") requires a range of security-related services, including the use of armed guards. AR Tab 10 (RFP PWS § 1.0 (Rev. 2), at 6).

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

17. Section M.11 of the RFP states that Award will be made to the offeror whose proposal represents the best value to the Government. AR Tab 6 (RFP), § M.1, at 35.

18. Section M.4, "Factors To Be Evaluated," sets forth the following evaluation Factors and Subfactors to be evaluated by the Source Selection Evaluation Board ("SSEB"):

TECHNICAL FACTORS
Factor 1 Management Approach
Factor 2 Technical Approach
Factor 3 Past Experience
Factor 4 Past Performance
Factor 5 Socioeconomic
PRICE

AR Tab 6 (RFP), § 4.1, at 36.

**Erinys's Proposal**

19. Erinys is one of two incumbent contractors currently performing a portion of the same services that the RSSS Contract will replace.

20. On March 3, 2007, Erinys submitted a proposal to compete for the RSSS Contract under the subject RFP (hereinafter "Erinys Proposal").

21. The Proposal states that: "For more than three years, Erinys has been the prime security provider for the Gulf Region Division, Iraq. . . . Erinys's extensive experience in infrastructure security has had a direct impact on the success of GRD reconstruction missions throughout Iraq. AR Tab 19, § III.1 at Introduction

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

22. Erinys's Proposal also contains the following quote from former GRD Commander Major General Ronald Johnson: "I am proud of the superior Executive Close Protection that Erinys has provided. They have saved my life on numerous occasions." See id. § IV.1 Introduction.

**Notice of Award and Debriefing**

23. On April 2, 2007, JCC-I/A sent a letter to Erinys stating that Erinys had been excluded from the competitive range and thereby eliminated from the competition. On April 3, 2007, Erinys requested a pre-award debriefing pursuant to FAR 15.505. On April 5, 2007, the CO provided a written debriefing to Erinys. AR Tab 17 (Erinys Debrief).

[redacted]

## The Agency's Treatment of the RFP's

## Requirement for Iraqi Licenses Was Fundamentally Flawed

26. The RFP contains specific requirements related to the licensing of contractors in Iraq.

27. RFP Section L.4.2.3, as amended, provides:

> Address Certifications by presenting: (1) contractor and its subcontractors at any tier must include a copy of a business license from the Iraq Ministry of Trade, with its proposal submission; and (2) contractor and its subcontractors at any tier must include a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior. If no license from the Kurdistan Regional Governate Ministry of Interior, you may provide signed copy of license application to the Kurdistan Regional Governate Ministry of Interior.

AR Tab 8 (RFP Amd. 1), at 8 (first page 8).

28. RFP Section M.4.1, Subfactor 1(c), as amended, provides:

> Address Certifications by presenting: (1) contractor and its subcontractors at any tier must include a copy of a business license from the Iraq Ministry of Trade, with its proposal submission; and (2) contractor and its subcontractors at any tier must include a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior. If no license from the Kurdistan Regional Governate Ministry of Interior, you may provide signed copy of license application to the Kurdistan Regional Governate Ministry of Interior.

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

AR Tab 8 (AR Amd. 2), at 10.

29. This licensing requirement was the subject of several questions by prospective offerors. See AR Tab 9 (1st Round Q&A), at No. 18; AR Tab. 11 (2nd Round Q&A), at Nos. 22, 44-46, 55, 58.

30. Some prospective offerors asked whether the Iraqi licenses could be submitted at the time of contract award or afterward, because obtaining the licenses was slow due to the "dysfunctional" Iraqi bureaucracy. See AR Tab 11 (2nd Round Q&A), Nos. 44, 45, 55. The Agency unequivocally stated that all prospective offerors must provide all required Iraqi licenses as part of their proposals, and that providing the licenses at the time of contract award or thereafter would be unacceptable. Id. at Nos. 44, 45.

31. Several questions related to the circumstances under which Iraqi licenses would be required for subcontractors, *e.g.*, whether Iraqi licenses were required for subcontractors that were not providing security services. See AR Tab 9 (1st Round Q&A), No. 18; AR Tab 11 (2nd Round Q&A), Nos. 22, 46). The Agency refused to respond with any substantive guidance. Instead, the Agency advised "Contractors and subcontractors must comply with all applicable laws of the jurisdiction in which they will perform work. If the contractor requires information about local laws, it is strongly recommended that they consult appropriate counsel." AR Tab 11 (2nd Round Q&A), at No. 46.

32. [redacted] Furthermore, the Agency Report contains no evidence that the Agency gave any serious consideration to whether the prospective offerors were in compliance with Iraqi licensing laws. The Agency did not enforce this requirement, but it also did not notify the offerors that it was relaxing the requirement.

33. A recent *Washington Post* article shows that this licensing issue has significant potential harm to U.S. Policy and goodwill in Iraq. In U.S. Security Contractors Open Fire in Baghdad," *Wash. Post*, at A01 (May 27, 2007), the story describes how employees of a private security firm under contract to the State Department "opened fire" on the streets of Baghdad twice in one week. It also notes that the security firm at issue had "not applied to operate as a private security company in Iraq." A senior American military adviser to the Iraqi Interior Ministry's intelligence directorate described the ministry as "a powder keg" that "could undermine a lot of the cordial relationships that have been built up over the past four years."

34. The U.S. Government should not be allowed to award the largest U.S. security contract to a team that is not fully compliant with Iraqi licensing requirements.

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

**The Past Performance Evaluation was Arbitrary, Irrational, and Inconsistent with the RFP, and It Afforded Unequal Treatment**

35. The RFP stated that offers would be evaluated based upon the past performance of the prime contractors and the significant subcontractors, defined as any subcontractor a subcontract of $550,000 or more. AR Tab 6 (RFP), at 39; AR Tab 8 (RFP Amd. 1), at 11-12; AR Tab 10 (RFP Amd. 2), at 7 (first page 7 unnumbered).

36. The Agency Report shows that the Agency assigned a Past Performance rating of [redacted] AR Tab 16 (Competitive Range Determination).

37. [redacted]

38. [redacted]

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

39. Additionally, the Agency rated Erinys an [redacted] for Past [redacted] AR Tab 2 (Contracting Officer's Statement), at 3 (pages unnumbered).

[redacted]

**The Source Selection Authority Failed To Compare Proposed Prices on an "Apples To Apples" Basis**

41. Section B of the RFP contains the Schedule of Supplies and Services and Prices/Costs. They are lists of labor categories necessary to perform the services required in the RFP's Performance Work Statement. Tab 6 (RFP), at 3-4 (some pages unnumbered).

42. The RFP required prospective offerors to fill in unit prices for each labor category and estimated quantities for each labor category. See id.

43. The Agency Report states that [redacted] submitted a total evaluated price of [redacted] submitted a total evaluated price of [redacted] submitted a total evaluated price of [redacted] AR Tab 16 (Competitive Range Determination).

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

[redacted]

45. Each offeror's total proposed price was based on three factors: its CLIN pricing, its estimate of the Government's potential requirements for each CLIN, and its proposed incentives. [redacted]

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

**<u>The Agency Failed to Conduct the Required Price Realism Analysis</u>**

47. The RFP stated that proposals would be evaluated for realism, reasonableness and completeness. AR Tab 6 (RFP) § M.4.1, at 40. The RFP set out the separate descriptions for the three different tests on completeness, reasonableness and realism. It described the "Realism" evaluation as follows:

> Proposed prices will be evaluated to determine if the prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the unique methods of performance and materials described in the offeror's proposal. If an Offeror's price is evaluated as unrealistically low or high compared to the anticipated price of performance and/or the offeror fails to recognize and/or mitigate management, technical, schedule, and price risks, the Government will reflect the inherent findings, risks, and associated price impacts in the Price Realism Analysis as well as in the appropriate Factor within the Technical proposal.

<u>Id</u>.

[redacted]

[redacted]

51. The Agency asserts that Erinys' proposal was excluded from the competitive range because [redacted] AR Tab 2 (Contracting Officer's Statement), at last page. However, the Record is utterly devoid of any analysis or evaluation to support it. Without any analysis – meaningful or otherwise – the Agency simply *assumed* [redacted]

**The Agency Rated [redacted] on the Management and Technical Approach Factors Based on Dramatically Higher Staffing Levels Than Were in [redacted] Price Proposal**

52. The Agency rated [redacted] for both the management and technical factors. Id. However, the record demonstrates that [redacted]

53. Tab 23 of the Agency Report contains spreadsheets comparing the FTE staffing for each offeror's technical proposals and price proposals. In [redacted]

54. The Agency never resolved this major discrepancy in [redacted] proposal, and instead credited [redacted] for offering full staffing in the technical evaluation while evaluating [redacted] proposed price based upon totally different – and reduced – staffing.

**The RFP Contained a Latent Ambiguity as to the Level of Expertise of the Staffing Sought by the Agency**

55. The Agency is seeking a contractor to protect the lives of Government officials in Iraq. The RFP states that "where the consequences

of failure are loss of life due to unsafe acts or inaccurate threat assessments . . . the standard of performance cannot be less than 100%; in effect a zero tolerance for failure to meet the standard." AR Tab 6 (RFP) § H.10 at page 19.

56. Recognizing the extremely high standard of performance required, Erinys proposed staff with "gold standard" qualifications. For example [redacted] AR Tab 19 (Erinys Proposal), at II-35. [redacted] Id. at II-54.

57. The RFP, moreover, indicated that the Government required higher-quality personnel at a higher price. The RFP stated a maximum value for the base and all option years to be $475,000,000. AR Tab 6 (RFP), at 6. Section M of the RFP likewise stated that "[a]ll technical factors combined are significantly more important than price." AR Tab 6 (RFP), at 35.

58. Erinys's prices [redacted]

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

[redacted]

59. While the proposals [redacted]

**<u>The Agency Rated [redacted] on the Management and Technical Approach Factors Despite Not Understanding of [redacted] Teaming Arrangement</u>**

61. The Agency rated [redacted] under the Management and Technical Approach factors. AR Tab 16 (Competitive Range Determination).

62. However, the record shows that the Agency had not basis to understand [redacted] The Competitive Range Determination document states [redacted] lists the flaw as a weakness. AR Tab 16 (Competitive Range Determination),

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

at 5. The SSEB noted the same flaw, but listed it as a deficiency. AR Tab 15 (SSEB Report), at 7.

**The Agency Rated [redacted] Technical Approach [redacted] Despite Significant Known Risks**

63. The Agency rated [redacted] for the Management and Technical Approach factors. AR Tab 16 (Competitive Range Determination).

64. [redacted] proposal contained a significant assumption in its [redacted] AR Tab 15 (SSEB Report), at 8. Moreover, [redacted] Id.

65. The Agency noted [redacted] assumption in the Competitive Range Determination, but there is no evidence that the Agency considered the risks associated with this assumption.

**The Agency Overlooked the Technical Merits of Erinys's Proposal**

[redacted]

[redacted]

67. Most of these elements were not discussed in either the SSEB Consensus report or the Competitive Range Determination.

68. Significantly, in its Legal Memorandum, the Agency does not address these elements separately but merely asserts, in conclusory fashion, that the SSEB consensus report notes [redacted] of the proposal elements at issue – then lists proposal elements discussed by the SSEB Report without addressing what was *not* discussed. AR Tab 1 (Legal Memorandum), at 28.

69. The Contracting Officer's statement is even more conclusory, stating simply that [redacted] AR Tab 2 (Contracting Officer's Statement), second page.

**Erinys's [redacted] Rating for the Management Approach Factor Was Irrational.**

70. The RFP imposes no requirement for the number of key persons and leaves it up to offerors. AR Tab 6 (RFP) § H.6 at 18. However, the record demonstrates that the Agency downgraded Erinys's proposal because [redacted] AR Tab 16 (Competitive Range Determination), at 17.

71. The RFP did not require offerors to list the number of years of experience of the Project Director. The RFP simply required offerors to provide resumes that "highlight each individual's experience." AR Tab 6 (RFP) § M.4 at 38. Erinys supplied a compliant resume describing [redacted] experience for the [redacted] AR Tab 19 (Erinys Proposal), Tech. Prop. at A-1. Nevertheless, the Agency downgraded Erinys for failing to list [redacted]

**The Past Experience Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors**

72. Section L.6 of the RFP, as amended, required offerors to provide past experience information for themselves and their significant subcontractors. Section M.4.1, Factor 3, states that this will be a mandatory evaluation criteria. AR Tab 10 (RFP Amd. 2), at 6 (paged unnumbered).

73. The SSEB Report and the Competitive Range Determination indicate that every offeror submitted the required Past Experience information for its significant subcontractors -- [redacted]

74. Indeed, the Agency rated [redacted] for this Factor despite [redacted] obvious failure to comply with the mandatory RFP criteria.

**The Socioeconomic Evaluation Were Not In Compliance with the RFP and Afforded Unequal Treatment To Offerors.**

75. The RFP contained specific evaluation criteria for the Socioeconomic Factor. AR Tab 6 (RFP), at 39-40.

76. The record shows that the Agency failed to follow these criteria in its evaluations of [redacted].

77. [redacted] were improperly given credit for the [redacted] although this was not an RFP evaluation factor. AR Tab 16 (Competitive Range Determination) at 4, 8.

78. The Agency also gave credit to [redacted] for the [redacted] this was not an RFP evaluation factor. Id.

79. [redacted]

**The Agency Improperly Eliminated Erinys From the Competitive Range Based on Informational Deficiencies That Should Have Been Addressed through Clarifications and Communications**

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

80. The record shows that the Agency improperly eliminated Erinys from the competitive range based largely upon informational deficiencies that should have been addressed through allowed exchanges with Erinys.

81. Nearly all of the weaknesses or other proposal flaws that the Agency used to downgrade Erinys in the nonprice evaluations were the result of informational deficiencies, rather than substantive flaws in its proposal.

82. As an example, the Agency criticized Erinys [redacted] although no requirement to submit [redacted] appears in the solicitation, and [redacted] in detail. AR Tab 1 (Legal Memorandum), at 33.

83. Additionally, Erinys was downgraded on the Past Performance factor evaluation because the Agency assumed Erinys [redacted] Id. at 19.

84. The Agency should have conducted communications pursuant to FAR § 15.306 rather than exclude offerors from participating in the procurement on the basis of informational issues that could easily be addressed.

85. In sum, the nonprice evaluations should never have turned on such informational issues that are so readily corrected.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER~~

## CLAIMS FOR RELIEF

### Count I – The Agency's Relaxation of the RFP Licensing Requirement Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law

86. Erinys herein repeats and realleges 1-85 as fully stated herein.

87. The RFP required offerors to submit with its proposal submission, for the contractor and its subcontractors at any tier, a copy of a business license from the Iraq Ministry of Trade and a copy of an operating license (or a temporary operating license) from the Iraq Ministry of Interior and, if available, the Kurdistan Regional Governate Ministry of Interior.

88. This RFP requirement was mandatory to ensure compliance with Iraqi law.

[redacted]

90. The Agency failed to notify the offerors that it was [redacted]

91. These actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

92. The Agency treated Erinys unequally by assigning it a [redacted] for not complying with this requirement, while not penalizing other offerors on the same point.

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

**Count II – The Agency's Past Performance Evaluation Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law**

93. Erinys herein repeats and realleges 1-85 as fully stated herein.

94. The RFP stated that offers would be evaluated based upon the past performance of the prime contractors and the significant subcontractors, defined as any subcontractor or a subcontract of $550,000 or more.

95. The Agency assigned a Past Performance rating of [redacted] solely because of informational deficiencies and/or the *Agency's* inability to contact references – not for poor past performance.

96. When JCC-I/A had difficulty reaching references for nearly all of the offerors, it simply gave up instead of undertaking the "clarifications" process permitted under FAR § 15.306.

97. These actions were arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

98. The Agency treated the prospective offerors unequally by assignin[redacted] for past performance, but there is no evidence that tha[redacted]rovided any past performance information for its subcontractors – a mandatory solicitation requirement.

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

**Count III – The Agency's Basis for Comparing Price Proposals Was Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law**

99. Erinys herein repeats and realleges 1-85 as fully stated herein.

100. The Agency Report states that Erinys was eliminated from the competitive range [redacted]

101. The Source Selection Authority based his/her decision on a price evaluation determination that [redacted]

102. The Agency's price comparison was arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count IV – The Agency's Failure to Conduct a Meaningful Price Realism Analysis Was Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law**

103. Erinys herein repeats and realleges 1-85 as fully stated herein.

104. The RFP stated that proposals would be evaluated for realism, *i.e.*, whether the proposed prices are realistic for the work to be performed, reflect a clear understanding of the requirements, and are consistent with the

unique methods of performance and materials described in the offeror's proposal.

105. The Agency Report failed to [redacted]

106. The Agency's failure to conduct a meaningful price realism analysis was arbitrary, capricious, an abuse of discretion, and not in accordance with the law, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count V – The Agency's High Rating of [redacted] Management and Technical Approach, Despite the Higher Staffing Levels Than Were in [redacted] Price Proposal, Was Arbitrary, Capricious, and Irrational**

107. Erinys herein repeats and realleges 1-85 as fully stated herein.

108. The Agency rated [redacted] for both the management and technical factors, despite the fact that [redacted] proposed staffing in its technical proposal was dramatically higher than the staffing in its price proposal.

109. The Agency's actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count VI – The Agency Misevaluated the Proposals Because of a Latent Ambiguity in the RFP**

110. Erinys herein repeats and realleges 1-85 as fully stated herein.

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER~~

111. The RFP informed prospective contractors of the importance of the life-saving services required for the RSSS Contract and the extremely high standard of performance, and therefore the need for higher-quality personnel at a higher price.

112. The Agency, however, excluded Erinys from the competitive range [redacted] disregarding the higher quality aspects of its proposal.

113. The Agency accepted low-priced proposals into the competitive range without analyzing the quality of the service providers.

114. [redacted] strongly suggests that the offerors were not proposing on a common basis due to a latent defect in the RFP.

115. The Agency's failure to evaluate the differing levels of service quality, due to a latent ambiguity in the RFP, was arbitrary and irrational, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count VII – The Agency's High Ratings of [redacted] Management and Technical Approach Factors Were Arbitrary, Capricious, an Abuse of Discretion and Otherwise Not in Accordance with the Law**

116. Erinys herein repeats and realleges 1-85 as fully stated herein.

117. The Agency rated [redacted] under the Management and Technical Approach factors, but the record shows that the Agency never understood the [redacted]

118. By assigning such the highest possible rating for these evaluation factors without [redacted] vital to contract performance, the Agency acted arbitrary and capriciously, in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count VIII – The Agency's Assignment of a [redacted] Evaluation Rating to [redacted] Technical Proposal, Despite Significant Known Risks, Was Arbitrary, Capricious, and Irrational**

119. Erinys herein repeats and realleges 1-85 as fully stated herein.

120. The Agency rated [redacted] for the Management and Technical Approach factors despite the highly risky assumption [redacted]

121. These actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count IX – The Agency Arbitrarily and Capriciously Overlooked the Technical Merits of Erinys's Proposal**

122. Erinys herein repeats and realleges 1-85 as fully stated herein.

123. The record shows that the Agency overlooked many significant strengths of Erinys's proposal.

124. These actions were arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A) (2000).

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

**Count X – The Agency's [redacted] Rating for Erinys's Management Approach Factor Was Arbitrary, Capricious, and Irrational**

125. Erinys herein repeats and realleges 1-85 as fully stated herein.

126. The Agency downgraded Erinys for the Management Approach Factor based on undisclosed evaluation criteria and other issues not addressed in the RFP.

127. These actions were arbitrary, capricious, and irrational in violation of 5 U.S.C. § 706(2)(A) (2000).

**Count XI – The Agency's Past Experience Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors**

128. Erinys herein repeats and realleges 1-85 as fully stated herein.

129. The RFP required offerors to provide past experience information for themselves and their significant subcontractors.

130. The Agency did not [redacted] Indeed, the Agency rated [redacted] for this Factor despite [redacted] obvious failure to comply with the mandatory RFP criteria.

131. These actions were arbitrary and in violation of the RFP, in violation of 5 U.S.C. § 706(2)(A) (2000).

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER~~

132. The Agency treated the prospective offerors unequally by enforcing the [redacted]

**Count XII – The Socieconomic Evaluation Was Arbitrary, Inconsistent with the RFP, and Afforded Unequal Treatment to Offerors**

133. Erinys herein repeats and realleges 1-85 as fully stated herein.

134. The RFP contained specific evaluation criteria for the Socioeconomic Factor.

135. [redacted] were improperly given credit for factors that were not included in the RFP, and apparently was not held to the standards that were contained in the RFP.

136. These actions were arbitrary and in violation of the RFP, in violation of 5 U.S.C. § 706(2)(A) (2000).

137. The Agency treated the prospective offerors unequally by [redacted]

**Count XIII – The Agency Improperly Eliminated Erinys From the Competitive Range Based on Informational Deficiencies That Should Have Been Addressed through Clarifications and Communications**

138. Erinys herein repeats and realleges 1-85 as fully stated herein.

139. The Agency eliminated Erinys from the competitive range based largely upon informational deficiencies that should have been addressed through exchanges with Erinys.

140. Nearly all of the weaknesses or other proposal flaws that the Agency used to downgrade Erinys in the nonprice evaluations were the result of informational deficiencies, rather than substantive flaws in its proposal.

141. The Agency should have conducted communications pursuant to FAR § 15.306 rather than exclude offerors from participating in the procurement on the basis of informational issues that could easily be addressed.

142. By failing to do so, the Agency acted arbitrarily, capriciously, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A) (2000).

WHEREFORE, Erinys requests that it be granted the relief requested in its Requests for Relief.

## REQUESTS FOR RELIEF

Erinys respectfully requests this Court to enter judgment in Erinys's favor and against Defendant, and to provide the following relief:

1. a declaratory judgment that the Agency's elimination of Erinys from the competitive range was contrary to law, arbitrary, capricious, unreasonable, and of no force or effect;

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

2. an order directing the Agency to reinstate Erinys to the competitive range, to conduct meaningful discussions with Erinys, to solicit another round of offers, and to evaluate revised offers fairly and equally;

3. an order awarding Erinys its bid preparation and proposal costs in an amount to be proven;

4. an order awarding Erinys its costs of pursuing this action, including attorneys' fees, and expenses; and

5. such other relief as the Court may deem just and appropriate.

Respectfully submitted,

Robert S. Nichols, Esq.
(Counsel of Record)
Elizabeth W. Newsom, Esq.
Angela B. Styles, Esq.
Charlotte Gillingham, Esq.
Dane Swanson, Esq.
(Of Counsel)

CROWELL & MORING LLP
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2541
Fax: (202) 628-5116
Protected Fax: (202) 508-8989

Attorneys for Plaintiff
Erinys Iraq Ltd.

June 1, 2007

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH PROTECTIVE ORDER

# REPORT OF THE ACQUISITION ADVISORY PANEL

to the Office of Federal Procurement Policy
and the United States Congress

January 2007

FPDS-NG now collects information on interagency contracts. However, adding a new collection requirement on any ongoing contract or order creates a myriad of unavoidable migration issues. Moreover, information on the extent of competition at the order level is not reliable due to a number of issues including: (i) automatic DoD coding of all GSA schedule orders as full and open competition, (ii) coding of other orders as full and open based on the master contract, and (iii) system migration rule failure.

The Panel also is concerned with the amount of incorrect data entered into the system by agencies, such as the ultimate value (base plus options) requiring the Panel to rely solely on the transaction value of an order, significantly less than the ultimate value.

The data section of the Report documents a long history of inaccurate data input by agencies. For example, the Panel's survey of PBA contracts and orders found that of the sample reviewed, 42 percent that were entered in FPDS-NG as performance based, clearly were not (with some agencies admitting to FPDS-NG coding errors). Among other recommendations for data improvement, the Panel has made several to focus attention on the importance of agencies inputting accurate data, including a statutory amendment assigning Agency Heads the accountability for accurate input. In those limited circumstances where the Panel and FPDS-NG staff were able to obtain data on interagency contracts, the Panel recommends providing public access to that data online.

## III. Statutory Charter: Ensuring Effective and Appropriate Use of Performance-Based Contracting

Performance-based Contracting, now called Performance-based Acquisition ("PBA"), is an approach to obtaining innovative solutions by focusing on mission outcomes rather than dictating the manner in which the contractor's work is to be done. Those outcomes are then measured and the contractor compensated on the basis of whether or not the outcomes are achieved.

During the Panel's public deliberations, there was some debate as to the value of this technique. Witness testimony, as well as written public statements, was mixed on PBA merits. One member and some public comments questioned the validity of PBA for government uses after more than a decade of attempts to implement have failed to produce expected results. Others, however, noted significant successes using PBA. And though a 1998 OFPP study found generally positive results, the Panel found no systematic government-wide effort to assess fully the merits of the process. Many spoke to the challenges in implementing the technique, most of which focused on the acquisition workforce, including those who define requirements. Even commercial organizations told the Panel that implementing the technique can be difficult, especially identifying the appropriate performance standards to measure. Despite the difficulty, it remains the preferred commercial technique seen as critical to obtaining transformational and innovative solutions. Ultimately, the Panel determined that in view of a lack of data supporting either that the technique is unworkable in the federal government sector or that PBA's costs outweigh its benefits, the Panel's statutory mandate was clear: improve the effectiveness and appropriate use of PBA. As such the Panel recommendations should not be interpreted as offering a long-term endorsement of PBA. Rather the Panel aims are directed at improving current