AGREED UPON REDACTIONS – MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| ERINYS IRAQ LTD. | |
| Plaintiff, | |
| v. | CFC No. 07-562C |
| THE UNITED STATES OF AMERICA | Judge Christine O.C. Miller |
| Defendant | |
| and | ~~**FILED UNDER SEAL**~~ |
| AEGIS DEFENCE SERVICES LTD. | ~~Proposed Redacted Version for Public Release~~ |
| Intervenor-Defendant. | |

**RESPONSE OF INTERVENOR-DEFENDANT AEGIS DEFENCE SERVICES LTD. TO PLAINTIFF ERINYS IRAQ LTD.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: August 17, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION AND SUMMARY ..... 1

ARGUMENT ..... 3

I. ERINYS IGNORES THE APPROPRIATE LEGAL STANDARD ..... 3

II. THE ARMY PROPERLY EVALUATED PRICE ..... 4

A. The Agency Properly Found the Erinys Price Non-Competitive ..... 4

1. The Army Properly Considered "Ceiling" Prices And Did Not Rely Solely on Total Ceiling Prices ..... 4

2. The Army Properly Compared Offerors' Unit Prices ..... 6

3. The Prices are Reasonable for the Work Proposed ..... 11

4. The Aegis and ArmorGroup Unit Prices Are Realistic And Do Not Raise "Red Flags" ..... 11

B. The Test is Whether the Erinys Proposal Was One of "the Most Highly Rated," Not Whether Erinys Could Reduce its Price Through Discussions ..... 14

C. The Army Properly Evaluated Incentive Fee Rates ..... 15

1. Erinys Improperly Took Exception to the Performance Incentive Requirement ..... 16

2. Aegis Did Not Take Exception to the Performance Incentive Requirement ..... 17

D. The Army Properly Evaluated the Completeness of the Erinys Price Proposal ..... 19

III. THE ARMY PROPERLY DETERMINED THE COMPETITIVE RANGE WITHOUT REGARD TO POST-CORRECTIVE ACTION, POST-COMPETITIVE RANGE DISCUSSIONS ..... 20

IV. THE AGENCY'S EVALUATION OF THE NON-PRICE FACTORS WAS REASONABLE, RATIONAL, AND IN ACCORDANCE WITH THE RFP CRITERIA; ALL OFFERORS WERE TREATED EQUALLY .......... 23

A. Aegis's Proposal Did Not Contain Informational Deficiencies Regarding its [redacted] .......... 25

B. Aegis's Socioeconomic Proposal Met and Exceeded the Solicitation Requirements .......... 26

C. The Agency Properly Downgraded Erinys for Failing to Provide Adequate Details About its Key Personnel .......... 27

D. Erinys's Property Control System was Evaluated in Accordance With the RFP Criteria .......... 28

CONCLUSION .......... 29

CERTIFICATE OF SERVICE .......... 30

APPENDIX

Unit Prices of Offerors Compared to IGE Unit Prices .......... 1-3



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

# TABLE OF AUTHORITIES

**Cases**

Arctic Slope World Services, B-284481,
April 27, 2000, 2000 CPD ¶ 75 .......... 24

Beta Analytics Int'l, Inc. v. United States,
67 Fed. Cl. 384 (2005) .......... 24

Blue & Gold Fleet, LP v. United States and Hornblower Yachts, Inc.,
___ F.3d ___, No 2006-5064, 2007 U.S. App. LEXIS 15150
(Fed. Cir. June 26, 2007) .......... 4

CSE Constr.,
B-291268.2, December 16, 2002, 2002 CPD ¶ 207 .......... 12

CW Government Travel, Inc.-Reconsideration,
B-295530.2, July 25, 2005, 2005 CPD ¶ 139 .......... 6

Cybertech Group v. United States,
48 Fed. Cl. 638 (2001) .......... 16

De Leon Technical Services, B-288811, December 12, 2001,
2002 CPD ¶ 10 .......... 24

Ducam, Inc., B-285485,
August 23, 2000, 2000 CPD ¶ 144 .......... 24

Dynacs Eng'g Co., Inc. v. United States,
48 Fed. Cl. 124 (2000) .......... 21

Galen Med. Assocs. v. United States,
74 Fed. Cl. 377, 384 (2006) .......... 17

Gov't Telecommns., Inc.,
B-299542.2, June 21, 2007, 2007 CPD ¶ --, 2007 U.S. Comp. Gen. LEXIS 127 .......... 3

Hopi Tribe v. United States,
55 Fed. Cl. 81 (2002) .......... 17

Info. Sciences Corp. v. United States,
73 Fed. Cl. 70, 100 (2006) .......... 12, 13



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Info. Systems Tech. Corp.,
B-259996, May 3, 1995, 95-1 CPD ¶ 230 .......... 24

Labat-Anderson Inc. v. United States,
50 Fed. Cl. 99, 106 (2001) .......... 13

Mantech Telecomms. & Info. Sys. Corp. v. United States,
49 Fed. Cl. 57 (2001), aff'd, 30 Fed. Appx. 995 (Fed. Cir. 2002) .......... 16

Maytag Aircraft Corp.,
B-287589, July 5, 2001 .......... 24

PGBA, LLC v. United States,
57 Fed. Cl. 655 (2003) .......... 15

Resource Consultants, Inc.,
B-293073.3-.6, June 2, 2004, 2005 CPD ¶ 131 .......... 7, 15

Satellite Servs., Inc.,
B-295866-.2, April 10, 2005, 2005 CPD ¶ 84 .......... 13

T&S Prods. v. United States,
48 Fed. Cl. 100 (2000) .......... 24

Tecom, Inc.,
B-275518.2, May 21, 1997, 97-1 CPD ¶ 221 .......... 13

United Enter. & Assocs. v. United States,
70 Fed. Cl. 1, 26 (2006) .......... 24

University Research Co.,
B-294358, etc., October 28, 2004, 2004 CPD ¶ 217 .......... 23

West Coast Copy, Inc.,
B-254044, November 16, 1993, 93-2 CPD ¶ 283 .......... 6

**Regulations**

FAR 15.305(a)(1) .......... 7

FAR 15.306(c) .......... 3, 14, 20

FAR 15.404-1(b)(2) and (3) .......... 7



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

AGREED UPON REDACTIONS - MAY BE MADE PUBLIC

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
Washington, D.C.

BID PROTEST

| | |
|---|---|
| ERINYS IRAQ LTD.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant<br><br>and<br><br>AEGIS DEFENCE SERVICES LTD.<br><br>Intervenor-Defendant. | CFC No. 07-562C<br><br>Judge Christine O.C. Miller<br><br>FILED UNDER SEAL<br>Proposed Redacted Version for Public Release |

**RESPONSE OF INTERVENOR-DEFENDANT AEGIS DEFENCE SERVICES LTD. TO PLAINTIFF ERINYS IRAQ LTD.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Defendant-Intervenor Aegis Defence Services Ltd. ("Aegis"), submits the following response to the Motion of Plaintiff Erinys Iraq Ltd. ("Erinys") for Judgment on the Administrative Record ("Erinys Motion").

## INTRODUCTION AND SUMMARY

Erinys ignores the relevant legal standard. Instead, Erinys asks the Court to substitute its judgment for that of the agency, under a standard that neither the agency nor the Court could apply. Erinys's misfortune is not due to any agency action, but is the result of its own failure to submit a competitive proposal.

Remarkably, the Erinys motion does not even refer to the applicable standard (i.e., whether Erinys submitted one of "the most highly rated proposals") to justify inclusion in the competitive range. See Aegis Motion at 17-23. The only way for Erinys to prevail would be to show there are no meaningful distinctions between its proposal and those of Aegis and ArmorGroup North America, Inc. ("ArmorGroup"). But Erinys does not even suggest that its proposal was "among the most highly rated." Instead, Erinys rests on the assertion that it could have improved its proposal if only it ***had*** been included in the competitive range. But that is not the test. Rather, the assertion is predicated on the pre-1997 – and now discarded – FAR rule.

In this fixed-price nature procurement, price risk lies with the contractor. Erinys does not dispute that its fixed unit prices were substantially higher than those of Aegis, ArmorGroup [redacted] Erinys only seeks another opportunity, despite the RFP warning to offerors to submit their best prices in their initial offer or risk being excluded. Erinys also disagrees with the Army's price reasonableness and realism analysis. But Erinys only quibbles – it does not suggest what alternative mandatory technique the Army should have used.

With regard to the performance incentive fee requirements, Erinys falsely claims that [redacted] In fact, Aegis's proposal expressly stated in numerous instances that [redacted]

Similarly, Erinys's challenges to the evaluation of the non-Price factors are mere nitpicking. In each instance identified by Erinys, the Army has a reasonable and justified



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

basis for its actions. In sum, Erinys was non-competitive on so many factors that Erinys could not under any circumstances be included in the competitive range.

## ARGUMENT

### I. ERINYS IGNORES THE APPROPRIATE LEGAL STANDARD

Notably absent from the Erinys motion is any reference to the governing legal standard in FAR 15.306(c) ("the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals ...."). Erinys does not allege that its proposal was one of "the most highly rated." Accordingly, Erinys has not stated grounds for relief, and its motion should be denied for that reason alone.

Erinys mistakenly suggests that if its proposal is susceptible of being made acceptable for award, Erinys must be included in the competitive range. That, however, is the old, discarded pre-1997 legal standard. The standard before the Court is whether Erinys submitted one of "the most highly rated proposals." FAR 15.306(c). See also Aegis Motion at 17-23

Erinys is clearly not one of the most highly rated offerors. Aegis, ArmorGroup [redacted] all had better ratings and lower prices. The agency determined that [redacted] price was too high to be included in the competitive range. The Erinys price is even higher. It is undisputed that Erinys had the highest total and unit prices proposed. As a result, Erinys is well outside the range of competitive offers. See, e.g., Gov't Telecommns., Inc., B-299542.2, June 21, 2007, 2007 CPD ¶ --, 2007 U.S. Comp. Gen. LEXIS 127 (agency reasonably excluded highest priced proposal containing informational deficiencies and material technical noncompliance).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## II. THE ARMY PROPERLY EVALUATED PRICE

### A. The Agency Properly Found the Erinys Price Non-Competitive

#### 1. The Army Properly Considered "Ceiling" Prices And Did Not Rely Solely on Total Ceiling Prices

Erinys criticizes the agency's focus on ceiling prices. However, the Request for Proposals ("RFP") called for the agency to evaluate "total proposed prices" (i.e., ceiling prices) and Erinys did not protest the RFP. More specifically, the RFP stated that "price evaluations will analyze unit prices, ***total proposed prices***, performance incentive rates and maximum performance incentive amounts, for the basic performance period and all option periods." AR, Tab 4 at 139. (emphasis added). The "ceiling" prices here correspond to "total proposed prices." Because Erinys failed to timely protest the terms of the solicitation, it may not now object to the agency's use of ceiling prices in the evaluation. Blue & Gold Fleet, LP v. United States and Hornblower Yachts, Inc., ___ F.3d ___, No 2006-5064, 2007 U.S. App. LEXIS 15150, at *11 (Fed. Cir. June 26, 2007) (protest against terms of solicitation must be filed before the proposal due date). Moreover, Erinys proposes no alternative price realism analysis method, much less a method that was allegedly required by the RFP.

Erinys alleges that the RFP contains no common basis for selecting the quantities proposed by the offerors. Erinys Motion at 15. This amounts to an allegation that the RFP was deficient, and is therefore untimely. Blue & Gold Fleet, supra. The RFP expressly provided that the price evaluation would include, among other things, consideration of the total proposed prices. AR, Tab 4 at 139. The agency did exactly this, and more.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Erinys now claims that a comparison of the total prices is irrelevant because the Army did not perform any evaluation of the quantity estimates. Erinys Motion at 15. But the agency did review the quantities and it examined unit prices. See, e.g., AR, Tab 41 at 2875-77, 2886-91. What the Army found was that Erinys had the highest unit prices and the highest proposed prices by far. For example, Erinys propose[redacted] while Aegis proposed [redacted] AR, Tab 14 at 801-04[redacted] AR, Tab 41 at 2878 and 2879. Yet, the [redacted] See AR, Tab 41 at 2874 (Erinys) and 2871 (Aegis). [redacted] – it would not have put Erinys in the competitive range.

While Erinys asserts that the Army improperly used ceiling prices as a means of comparison, Erinys inconsistently suggests that it could have [redacted] a relatively trivial amount in this procurement. Compare Erinys Motion at 14 and 21.

It is clear from the solicitation that the total ceiling price is not a total fixed price for the entire contract effort, and as such, is not solely determinative. However, Erinys's unit prices – the one common basis of comparison – were the highest bid by a wide margin. Compare AR, Tab 14 at 801-04 (Erinys) and AR, Tab 16 at 1452-55 (Aegis). On this basis – indeed on any basis – Erinys remained by far the highest priced offeror. Given Erinys's lower rated technical proposal, its highest unit prices and proposed total prices, and its



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

exception to the incentive fee requirement, the agency acted reasonably in excluding Erinys from the competitive range.

Citing CW Government Travel, Inc.-Reconsideration, B-295530.2, July 25, 2005, 2005 CPD ¶ 139 and West Coast Copy, Inc., B-254044, November 16, 1993, 93-2 CPD ¶ 283, Erinys asserts the RFP "does not provide offerors with a common basis for proposing prices." Erinys Motion at p. 16. Erinys's citation of these cases is helpful because they dramatize why Erinys is not entitled to relief. In CW Government Travel, the protesters filed a timely challenge to the price evaluation scheme in an RFP for a multiple award ID/IQ contract. GAO sustained the protest because the solicitation did not require offerors to propose binding prices; i.e., fixed transaction and management fees, that an awardee would ultimately charge to the government. In West Coast Copy, the vendors' submissions were based on such a hodge-podge of different bases that a meaningful comparison of quotations was impossible.

In stark contrast, here the offerors were competing on the same basis; i.e., work of various descriptions, set forth in a Performance Work Statement ("PWS"), to be proposed on the basis of fixed hourly rates in the form of unit prices, along with ceiling prices and price incentive provisions. The agency could and did conduct a meaningful comparison of proposals. Erinys with full knowledge submitted a proposal in response to the solicitation, and lodged no protest against it.

**2. The Army Properly Compared Offerors' Unit Prices**

Erinys erroneously asserts the agency "has no idea whether Erinys' 'prices' are unreasonably high or the other offerors' 'prices' are unrealistically low ...." Erinys Motion at



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

11; see also Erinys Motion at 14. In a fixed price contract, "[n]ormally, competition establishes price reasonableness" and "comparison of the proposed prices will usually satisfy the requirement to perform a price analysis." FAR 15.305(a)(1). See also FAR 15.404-1(b)(2) and (3). See also Resource Consultants, Inc., B-293073.3-.6, June 2, 2004, 2005 CPD ¶ 131 (only limited price analysis is required for ID/IQ contract with fixed price task orders).

Here, the Army determined one of the seven offers was unrealistically low. The agency then evaluated the reasonableness and realism of the remaining six offers (AR, Tab 41 at 2886-91) and compared the offerors' unit prices for the thirty-four CLINs against each other and against the government estimate (AR, Tab 41 at 2892-2901). The agency's work was made easier by the closeness of the prices of Aegis and ArmorGroup, two experienced security contractors vying for the same work. The agency's analysis showed that the Erinys prices were materially higher than other offerors and thus non-competitive. Based on the government quantity estimate, Erinys's total price would have been [redacted] (AR, Tab 41 at 2899) while Aegis was at [redacted] (AR, Tab 41 at 2895).

Erinys erroneously asserts that the agency failed to properly evaluate offerors' unit prices. Erinys Motion at 10, 11-14, 17-18. In fact, the agency properly relied on offerors' unit prices to determine price reasonableness and realism. This was appropriate, especially since this is an indefinite delivery/indefinite quantity ("ID/IQ") contract with fixed price task orders under which contractors are required to provide personnel at the fixed labor rates regardless of contract profitability. Unit prices provided a common baseline for comparison. Erinys nevertheless quibbles that a comparison of the average unit prices "is meaningless



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

because there is no indication that the 'average' unit prices are 'realistic' or accurate measurement of the anticipated price of the contract performance." Erinys Motion at 17. Erinys, however, suggests no yardstick (mandatory or otherwise) that would demonstrate that Erinys's proposal should have been "among the most highly rated."

In any case, examination of the discrete labor categories confirms the Army's conclusion that Erinys had the highest unit prices. [redacted] This analysis strengthens and confirms the Army's conclusion that Erinys's pricing was significantly out of line and non-competitive.

Asserting "extreme differences in unit prices among the five offerors," Erinys points [redacted] It is unclear what point Erinys is attempting to make. [redacted] Far from any irregularity, the comparison confirms that the Aegis and [redacted] that neither one proposed unreasonable or overly low pricing across the thirty-four CLINs.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In contrast, Erinys [redacted] categories as follows:

| CLIN | POSITION | ERINYS PROPOSED UNIT PRICE AR, Tab 41 at 2872 | AVERAGE UNIT PRICE AR, Tab 41 at 2875 | IGE UNIT PRICE AR, Tab 11 at 521 |
|---|---|---|---|---|
| 0001AA | Supervisory/Senior Intelligence Analyst | [redacted] | | |
| 0001AB | Intelligence Analyst | | | |
| 0001AC | Intelligence Analyst/ Counterintelligence | | | |
| 0001AD | Senior Intelligence Analyst (Arab Linguist) | | | |
| 0001AE | Intelligence Analyst (Arab Linguist) | | | |
| 0001AJ | Division Project Communications Manager | | | |
| 0001AK | Communications Support Team Member | | | |
| 0001AM | G2 - Intelligence | | | |
| 0001AP | Operations Officer | | | |
| 0001AQ | Assistant Operations Officer | | | |
| 0001AR | Watchkeeper | | | |
| 0001AS | Iraqi Liaison Officer | | | |
| 0001AV | G1 - Personnel and Administration | | | |
| 0002AA | Security Escort Team Member | | | |
| 0003AA | Security Guard | | | |
| 0003AB | Security Guard - Construction Site | | | |
| 0003AD | Security Guard - Patrol Dog Qualified | | | |
| 0005AA | Vetting Specialist | | | |
| Total for 18 Positions' Unit Prices | | | | |

In any event, Erinys was between [redacted] than the average unit prices. AR, Tab 41 at 2876. Erinys was even higher when compared to the Independent



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Government Estimate ("IGE"). See Aegis Motion Appendix, at 4, 11-12 (Bonuccelli Decl., ¶¶ 8-9 and Exhibit 4).

Erinys's statement that its unit prices were closest to the IGE unit prices is erroneous. Erinys Motion at 18-19. As shown in the attached Exhibit (Appendix 1-3), a cursory analysis indicates [redacted] he problem for Erinys is that it proposed [redacted] AR, Tab 11 at 521-22; AR, Tab 41 at 2869-73; Appendix 1-3.

Another measure of accuracy is to examine the number of positions at plus or minus 10% of the IGE. Using this analysis, Aegis [redacted] While Erinys cries for more price analysis, additional analysis only makes things look worse for Erinys.

In another diversion, Erinys asserts there are "extreme differences in unit prices among the five offerors" and focuses on one specific CLIN, 0001AL. However, the evaluation was to be based on the totality of the CLINs. That is why a comparison of offerors' unit prices using the average of the CLINs is a reasonable approach. But even if the IGE hours are used instead, the Erinys price remains non-competitive. See Aegis Motion at 33 and supporting Declaration of Charles Bonuccelli, Appendix, at 4, 11-12 (Bonuccelli Decl. ¶ 9, Exhibit 4 to Bonuccelli Decl. at pp. 1-2); Appendix 1-3.

Erinys's complaint of extremes in unit prices is ironic given the differences between the Erinys proposed unit prices and the IGE. For example, Erinys proposed [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

### 3. The Prices are Reasonable for the Work Proposed

Erinys claims that the Army has no support to conclude that prices are reasonable for the work proposed. Erinys ignores the following:

- The Price Analysis Report. AR, Tab 41 at 2856-68.
- A comparison of all the offerors' total proposed prices. AR, Tab 41 at 2869-74.
- A comparison of Unit prices by each offeror to the average unit prices proposed. AR, Tab 41 2875-77.
- A review of the staffing from the technical and price proposal for each of the offerors. AR, Tab 41 at 2878-85.
- A list of the unit prices for each offeror with a yellow highlight on the lowest unit price per category. AR, Tab 41 at 2886-91.
- A comparison of offerors unit pricing using IGE staff estimate. AR, Tab 41 at 2891-2901.
- The proximity of the unit prices of Aegis and ArmorGroup to each other.

These analyses clearly support the comparative range decision.

### 4. The Aegis and ArmorGroup Unit Prices Are Realistic And Do Not Raise "Red Flags"

Erinys also erroneously argues that the Army failed to conduct a proper price realism analysis. An agency may provide for a price realism analysis in a solicitation for the award of a fixed price contract for the purpose of assessing whether an offeror's low price reflects



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

its understanding of the contract requirements or the risks inherent in an offeror's approach. CSE Constr., B-291268.2, December 16, 2002, 2002 CPD ¶ 207. This is a minimal test to determine whether the offeror's price is so low that it reflects a lack of understanding of the RFP's technical requirements. Here, Aegis and ArmorGroup both proposed prices that were close to each other. Aegis and ArmorGroup were rated first and second under the non-Price factors. The Army had no rational basis to conclude that the Aegis and ArmorGroup prices were so low as to reflect a lack of understanding of the agency's technical requirements.

Erinys asserts that the Army ignored "red flags" because the Aegis and ArmorGroup proposed prices were substantially below the IGE unit prices. Erinys Motion at 18-19. In fact, Aegis and ArmorGroup are the closest to the IGE. See attached Exhibit, Appendix 1-3. In any case, the FAR does not state that agencies should include offerors whose prices are closest to the IGE. Instead, the FAR requires inclusion of "the most highly rated" offers.

Moreover, Erinys fails to explain why the two separate incumbent contracts provide any basis for comparison. Erinys Motion at 19. Erinys ignores differences between the two incumbent contracts and the new contract, as well as possible efficiencies of operation and drawdown, as reflected in the PWS.

Erinys alleges that the RFP required the agency to perform a realism analysis of the offerors' proposed prices and that the purpose of that price realism analysis is to "ensure[] that the contract can actually be performed for the offered price." Erinys Motion at 17 (citing Info. Sciences Corp. v. United States, 73 Fed. Cl. 70, 100 (2006) (internal quotations omitted)). Info. Sciences Corp., however, involved a post-competitive range, post-award challenge to the agency's review of prices. This Court concluded that "[a]lthough [protester]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

disagrees with the outcome of the price analysis, that fact is not sufficient to warrant a finding of abuse of discretion." 73 Fed. Cl. 70, 103 (2006).

Moreover, how an agency conducts its price realism analysis is within the sound exercise of the agency's discretion (Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 106 (2001)) and the analysis will be reviewed "for reasonableness and consistency with applicable laws and regulations." Satellite Servs., Inc., B-295866, B-295866.2, April 10, 2005, 2005 CPD ¶ 84, at 3; see also Tecom, Inc., B-275518.2, May 21, 1997, 97-1 CPD ¶ 221, at 4 (agency performed a detailed price analysis consistent with the RFP and concluded that the awardee's proposed price "demonstrated a clear understanding of and sound approach to satisfying the requirement.").

The record here is replete with agency findings that the competitive range offerors demonstrated a clear understanding of and sound approach to satisfying the requirement. The fact that the Aegis and ArmorGroup proposals were rated the highest in the non-Price factors, and included prices that were remarkably close, validates the reasonableness as well as realism of their rates.

Erinys's reference to Aegis [redacted] ssumptions is misleading. Erinys Motion 19-20. These were not Aegis's assumptions; they were agency assumptions incorporated by the Army in the PWS for this procurement. AR, Tab 4 at 180-187 [redacted] There is no conflict in Aegis's assumptions regarding the cost associated with [redacted] Moreover, it appears the Erinys proposal [redacted] See AR, Tab 14 at 801-804 [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

### B. The Test is Whether the Erinys Proposal Was One of "the Most Highly Rated," Not Whether Erinys Could Reduce its Price Through Discussions

Erinys asserts that it should have been included in the competitive range so that it could reduce its price and become more competitive. Erinys Motion at 20-22. As stated above, that is not the test under FAR 15.306(c). In another diversion, Erinys argues that the Army cannot demonstrate that Erinys could not sufficiently reduce its price through discussions. That is not the Army's burden, and in any case it has nothing to do with the issues before the Court.

Among other things, the competitive range decision notes [redacted] AR, Tab 41 at 2854. Erinys states there is no analysis in the record to support or explain this statement. First, the Army statement is not central to the competitive range determination. Again, the test is not whether Erinys could have reduced its price through discussions, but instead whether Erinys was one of "the most highly rated" proposals. See Aegis Motion at 17-23.

In any case, Erinys's own statements to the Court confirm that a major rewrite would have been required for Erinys to substantially reduce its price. In the Erinys I Complaint, Erinys claimed that it submitted a "gold standard" proposal containing a high level technical approach, justified by high rates. Aegis Motion, Appendix, at 29 (Erinys I Complaint, ¶ 56).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

It follows that to substantially reduce its price, Erinys would need to re-think its entire technical approach, resulting in a substantial proposal rewrite.

Forsaking its assault on ceiling price as a reliable means of evaluation, Erinys inconsistently embraces ceiling price, asserting "if Erinys had been given the opportunity to correct the inconsistency in staffing between its technical and price proposals, then Erinys could have [redacted] without any change to its technical proposal, much less significant changes." Erinys Motion at 21-22. Erinys cites no support for this contention. In any event, the purported price reduction would have been miniscule in the context of this procurement.

Erinys cites PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003) to support its contention that the Army lacked any basis to conclude that changes to the Erinys price would have an impact on its technical proposal. However, PGBA, which involved a challenge to a Competition In Contracting Act ("CICA") stay override, is totally inapposite. As GAO has recognized, material changes to an offeror's cost proposal that result in changes to the number or types of FTEs would have an impact on the technical proposal as well. Resource Consultants, Inc., B-293073.3-.6, June 2, 2004, 2005 CPD ¶ 131. Accordingly, the agency had good ground for concluding (even as an aside) that Erinys could not reduce its price by a substantial margin without also making changes to its technical proposal. In any case, it hardly matters since Erinys's unit prices were so far out of line.

**C. The Army Properly Evaluated Incentive Fee Rates**

The Army properly found that Erinys's exception to the incentive price portions of the RFP made its proposal unacceptable. But again the subject is immaterial, because even



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

if the performance incentive requirements were not mandatory, Erinys would still have been excluded from the competitive range. [redacted] the third ranked offeror, scored higher than Erinys in the non-Price factors. Nonetheless [redacted] was excluded from the competitive range because its price was also too high, although not as high as Erinys's price.

**1. Erinys Improperly Took Exception to the Performance Incentive Requirement**

Erinys's proposal [redacted] AR, Tab 61 at 3633. See also, AR, Tab 61 at 3640 (Tables B-3 and B-4 listing maximum performance incentive amount as "N/A"). Erinys has no basis to complain that the Army assigned a deficiency to its proposal for failing to propose the performance incentive requirement.

Erinys cites Mantech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 67 (2001), aff'd, 30 Fed. Appx. 995 (Fed. Cir. 2002) to support its argument that the incentive fee rate was not mandatory. Erinys Motion at 12. In Mantech, however, the Court treated mandatory minimum requirements as essentially pass/fail in nature. 49 Fed. Cl. at 67. Here, RFP Section L provided instructions for items that ***must*** be included in an offeror's proposal. Specifically, Section L.10.3.3 states:

> Section B shall be submitted fully completed and error free. ***It shall contain the offeror's prices[,] performance incentive rates and maximum performance incentive amounts*** for the established Contract Line Item Numbers (CLINS) set forth in that section. The offeror is cautioned to complete all blanks to identify any CLIN not priced as "Not Separately Priced" or "N/A" as applicable.

AR, Tab 4 at 133 (Section L.10.3.3.). (emphasis added). The word "shall" brilliantly signals that the performance incentive fees were mandatory. Cybertech Group v. United States, 48



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Fed. Cl. 638, 650 (2001) ("in everyday discourse, 'shall' is used to denote an affirmative command or obligation whereas 'should,' by contrast, is used to denote a request or suggestion."); Galen Med. Assocs. v. United States, 74 Fed. Cl. 377, 384 (2006) n.10 ("Generally, 'should' is a request or directory suggestion vice the use of a mandatory 'shall'." (citing Hopi Tribe v. United States, 55 Fed. Cl. 81, 89 (2002)).

Moreover, Erinys's argument that Section L.10.3.3 "expressly contemplated that offerors may elect not to price some CLINs" falls short of the mark. Erinys Motion at 12. (emphasis in original). The RFP permitted offerors to propose some CLINs as not separately priced or not applicable ("n/a"). A mandatory CLIN could only be marked "n/a" if separately priced. The incentive fee information was independently required by Section M, and the RFP stated the Army would evaluate incentive fees. AR, Tab 4 at 139. Erinys has not explained how the Army could evaluate performance incentive rates and maximum performance incentive amounts if the offeror took exception to them.

**2. Aegis Did Not Take Exception to the Performance Incentive Requirement**

Erinys falsely asserts that the Army treated Erinys and Aegis disparately because Aegis [redacted] Erinys Motion at 13-14. Aegis, unlike Erinys, proposed an incentive fee. [redacted]

The Aegis proposal repeatedly stated "Aegis takes no exceptions ....." AR, Tab 16 at 1451. And Aegis did propose incentive fees. Offerors were required to identify their



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

proposed incentive amounts in Table B.3 and B.4 for CLINs 0010, 0011, 1010 and 1011. For each item, Aegis proposed [redacted] (emphasis added). AR, Tab 16 at 1456. There is a world of difference between Erinys noting "n/a" because it took exception to the RFP requirement, and [redacted]

For the Maximum Performance Incentive Amount for each CLIN, Aegis proposed [redacted] per year. This translates to [redacted]

While both the "Incentive Rate" and "Maximum Performance Incentive Amount" columns for the CLINs were marked "N/A" for Erinys, those same columns for Aegis were marked [redacted] respectively. Compare AR, Tab 61 at 3640 (Erinys Tables B-3 and B-4) and AR, Tab 16 at 1374 (Aegis Tables B-3 and B-4). Aegis proposed [redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted] See AR, Tab 16 at 1456 (Section 6.4.1 explaining Aegis's proposed incentive).

In summary, there was nothing unequal about the agency's treatment of Erinys and Aegis regarding incentive fees. Aegis offeror proposed them; Erinys did not.

**D. The Army Properly Evaluated the Completeness of the Erinys Price Proposal**

Erinys's argument that the agency improperly credited Aegis with meeting solicitation requirements when CLINs 1002AC, 1002AD, 0002AB and 1003AB were [redacted] is unfounded. Erinys Motion at 22. Aegis's technical proposal (AR, Tab 16 at 1196, 1200) clearly explained these CLINs. [redacted] Further, Aegis's price proposal [redacted] See AR, Tab 16 at 1412, 1414, 1453, 1455.[1] [redacted] Accordingly,

---

[1] Erinys (citing AR, Tab 16 at 1373) inadvertently cites the wrong version of the Aegis price proposal. Tab 16 of the Administrative Record includes three versions of the Aegis price proposal. All three copies have a cover page dated March 3, 2007. AR, Tab 16 at 1352, 1393, and 1434. The proposal due date was March 3, 2007. Version 1 was submitted on March 1, 2007. AR, Tab 16 at 1352. On March 2, 2007, Aegis submitted a revised version to correct typographical errors and otherwise address formatting issues. AR, Tab 16 at 1393. Version 3 is an identical copy of Version 2. AR, Tab 16 at 1434. All three versions were submitted before the March 3, 2007 closing date. The first version contains a typographical error on page one where "proposal" is misspelled as "proprosal." Id. at 1352. This error was corrected in the second version. Id. at 1392, 1434.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted] In fact, Aegis properly filled out all CLINs. See AR, Tab 16 at 1412, 1414, 1453, 1455.

## III. THE ARMY PROPERLY DETERMINED THE COMPETITIVE RANGE WITHOUT REGARD TO POST-CORRECTIVE ACTION, POST-COMPETITIVE RANGE DISCUSSIONS

Erinys's arguments regarding post-competitive range discussions amount to allegations of bad faith and are therefore subject to the strictest rigors of proof. The only discussions with offerors occurred after the initial competitive range determination and only with Aegis and ArmorGroup, the two most highly rated offerors. That is exactly what FAR 15.306(c) provides.

As part of agency corrective action, the Army reevaluated proposals and conducted a new competitive range determination. The reevaluation and new competitive range determination did not consider any information provided during discussions. The competitive range determination document and other post-corrective action documents omit any reference to the post-competitive range discussions between the Army, Aegis, and ArmorGroup. The reevaluated competitive range determination is solidly rooted in the proposals and only in the proposals.

Erinys provides only innuendo for its suggestion that information obtained during discussions was used to Erinys's detriment by evaluation personnel during the reevaluation. The competitive range document demonstrates the opposite. Thus, the competitive range determination identifies the same Aegis weaknesses that were addressed by Aegis during discussions. If the competitive range determination ***had*** included information from the Aegis discussions, these weaknesses would have been removed.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Erinys cites Dynacs Eng'g Co., Inc. v. United States, 48 Fed. Cl. 124 (2000) for the unremarkable holding that procuring agencies must avoid conducting prejudicially unequal discussions. Erinys Motion at 28. Dynacs was ***included*** in the competitive range. The issue was whether the level of discussions involving the competitive range offerors was unequal.

Erinys's reference to the Court's discussion of these issues when the agency determined to take corrective action is incomplete. Erinys Motion at 25. Erinys omits the material discussion:

> MR. PACHTER: What Ms. Newsom[] just said is incorrect. The requirement is that the Agency must have discussions with all offerors in the competitive range; only those offerors in the competitive range.
>
> The Agency is not required to have discussion with any offerors not in the competitive range. I think ***what Erinys is trying to do here is leap-frog into the competitive range, so that it can be eligible for discussions.***
>
> THE COURT: In other words – I was following up on that, too, Mr. Pachter. My question to Mr. Mager was going to be to ascertain whether these discussions that he's alluding to took place ***after the competitive-range determination.***
>
> That's very important because if they did, ***that was the normal course of operations.*** The question would be whether the record is capable of revealing that any decision, with respect to any offeror in this re-evaluation, ***be based solely on the proposals and not take into account anything that was elaborated upon in discussions.***
>
> MR. PACHTER: That is correct. The Agency would be required ***to make the new evaluation based on the initial proposal, and this happens*** [a]ny time an offeror is admitted to the competitive range, after there is already a competitive-range determination, and there are others that are within it[.] [I]n many of those cases there have already been discussions.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Erinys Complaint at Exhibit 2, June 7, 2007 Transcript at 15-16. (emphasis added). The Court elaborated further:

> THE COURT: There is a very clear way to avoid this kind of situation. And given these circumstances, the evaluators must be instructed again of their duty not consider anything other than the proposal. Because this is an easy hole to walk through let's avoid it.
>
> MS. NEWSOM[]: Your Honor, with all due respect, it is impossible to insure that anybody didn't take into account information that they learned.
>
> THE COURT: ***No, that isn't what we're trying to do.*** I have had corrective action taken in cases before and we've managed to go through it. You're not looking for – can you have sanitized minds? What you're looking for is -- ***is every determination solidly rooted in the proposal itself.***

Erinys Complaint at Exhibit 2, June 7, 2007 Transcript at 17. (emphasis added).

Further, Erinys makes the following unusual statement:

> On this point, Erinys notes the addition of the Agency's new "performance incentive" argument concerning Erinys' proposal <u>after</u> the re-evaluation. AR Tab 42 at 2912. The Government stated that because Erinys refused "to propose a performance incentive" that Erinys's proposal was unawardable. The Agency apparently seized upon this issue in Erinys' proposal only after extensive review, discussion, and revision of Aegis' performance incentive proposal.

Erinys Motion at 27-28. (emphasis in original). This is a strange assertion for Erinys to make. In its Erinys I Complaint, Erinys asked for a new competitive range determination and that is exactly what it got. Now that the Army has discovered an additional deficiency in the Erinys proposal, Erinys howls. Erinys's proposal plainly states: [redacted] AR, Tab 61 at 3633. (emphasis added).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

The suggestion that the agency "seized upon this issue" after reading Aegis's proposal leads nowhere. Erinys seeks to raise the bar by adding a requirement that the determination ***also*** ignore other proposals. But that would be improper; the competitive range determination is ***supposed*** to be predicated on evaluation of ***all*** proposals.

Erinys next fancifully asserts that the agency should have ensured that all agency personnel involved in discussions and proposal revisions be excluded from the reevaluation. This is another attempt by Erinys to raise the bar. Now it wants replacement not only of the principal decisionmaker but also, it would appear, the entire evaluation team! There are only a few bid protest decisions requiring exclusion of any agency personnel, including the contracting officer, and none of them provides any help to Erinys. See, e.g., University Research Co., B-294358, etc., October 28, 2004, 2004 CPD ¶ 217, n. 8 (recommending replacement of contracting officer who mischaracterized recommendations of source selection personnel and failed to disclose relevant information in decision document and in agency filings with GAO). Here, by coincidence, not because of any legal requirement, and without even requesting it, Erinys obtained the benefit of a new contracting officer and new Source Selection Authority. See Aegis Motion at 26, n.2. Erinys was not legally entitled to that, and it is certainly not entitled to more.

## IV. THE AGENCY'S EVALUATION OF THE NON-PRICE FACTORS WAS REASONABLE, RATIONAL, AND IN ACCORDANCE WITH THE RFP CRITERIA; ALL OFFERORS WERE TREATED EQUALLY

Erinys acknowledges that it was excluded from the competitive range because its prices were too high. Erinys Motion at 29. The Court's inquiry could properly end there. Nevertheless, still quibbling, Erinys says it should have received better ratings on the non-



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Price factors. Erinys mentions four instances in the evaluation record in which it disagrees with the Army's judgment. How any of these relatively minor items, even if correct, could propel Erinys into the competitive range is a mystery. Erinys's disagreement provides no ground for relief.

Evaluation of technical proposals is within "the agency's discretion since the agency is responsible for defining its needs and the best method of accommodating them." Arctic Slope World Services, B-284481, April 27, 2000, 2000 CPD ¶ 75. De Leon Technical Services, B-288811; December 12, 2001, 2002 CPD ¶ 10. The Court's function is limited to examination of whether the evaluation was reasonable and consistent with the RFP evaluation criteria. Mere disagreement with the agency's judgment is not sufficient to establish that the agency acted unreasonably. Info. Systems Tech. Corp., B-259996, May 3, 1995, 95-1 CPD ¶ 230; Arctic Slope World Services, Inc., B-284481; April 27, 2000, 2000 CPD ¶ 75; Maytag Aircraft Corp., B-287589, July 5, 2001; Ducam, Inc., B-285485, August 23, 2000, 2000 CPD ¶ 144. See also United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 26 (2006) (agency given deference in evaluation; mere disagreement is not enough); Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 395 (2005) (same); T&S Prods. v. United States, 48 Fed. Cl. 100, 104 (2000) ("The reviewing court cannot substitute its own judgment for that of the agency ... technical rating decisions are the 'minutiae of the procurement process' ... which involve discretionary determinations of procurement officials that a court will not second guess.").



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**A. Aegis's Proposal Did Not Contain Informational Deficiencies Regarding its** [redacted]

Erinys argues that Aegis stated [redacted] Erinys Motion at 30, 31. Erinys claims that this informational deficiency was barely mentioned in the Aegis evaluation and that the agency could not have understood and therefore not properly evaluated [redacted] Id. at 31.

Aside from being lost in the weeds, Erinys mischaracterizes the Aegis proposal. Aegis provided sufficient information regarding [redacted] to meet the RFP requirements and to apprise the Army [redacted] Perhaps most importantly [redacted]

RFP Section L.6.5 states:

> Information required in the above paragraphs shall be provided for each proposed subcontractor who will perform a significant portion of the effort. "Significant" is defined for these purposes in terms of estimated dollar amount of the subcontract (e.g., $550,000 or more).

AR, Tab 4 at 131 (Section L.6.5). Aegis's Past Experience Volume makes clear that it was not proposing [redacted] AR, Tab 16 at 1275.

In any event, the Aegis proposal stated, with respect to thee two companies:

[redacted]



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

[redacted]

AR, Tab 16 at 1090.

Further:

[redacted]

AR, Tab 16 at 1271.

### B. Aegis's Socioeconomic Proposal Met and Exceeded the Solicitation Requirements

Still drifting from the issue before the Court, Erinys next suggests Aegis's socioeconomic proposal was evaluated on unstated evaluation criteria that allowed Aegis to be rated higher than Erinys's proposal. Erinys Motion at 32-35. Erinys states the SSA did



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

not discuss any of the ten evaluation criteria listed in RFP Section M.4.1 but relied instead on Aegis's "activities separate and apart from the anticipated contract." Id. at 33. According to Erinys, the strengths the SSA assigned Aegis under this factor "bear no relation to this contract or the Socioeconomic factor evaluation criteria." Id. at 34.

Erinys speculates that the only reason Erinys [redacted] and Aegis [redacted] for this factor must be that the SSA improperly utilized unstated evaluation criteria. Erinys Motion at 34. But the SSA observed that Aegis submitted all of the required documentation requested for this factor, and offered innovative enhancements. AR, Tab 41 at 2801 ("***In addition to submitting the required documentation*** as requested for this factor, this offeror has shown a history of employing Iraqis and has indicated that it employs approximately 250 Iraqi …). (emphasis added). Aegis proposed innovations specifically for the new RSSS contract. AR, Tab 16 at 1098-99. Aegis also fully complied with the RFP requirements. Id. at 1325-51 (Aegis Socioeconomic Proposal, File V, providing details on how Aegis will comply and fulfill the socioeconomic requirements of the RFP).

**C. The Agency Properly Downgraded Erinys for Failing to Provide Adequate Details About its Key Personnel**

Erinys then suggests it was improperly downgraded for not providing the length of experience of its proposed key person, the Project Director. Erinys Motion at 35. Erinys asserts that the Project Director's length of experience is listed in his resume and neither Aegis nor ArmorGroup provided this information about their key personnel. Id. Moreover, Erinys alleges it alone was downgraded for information the RFP did not require. For example, Erinys states the RFP did not require (a) the length of experience of a key person



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

to be stated in the Management Approach Proposal, and (b) a minimum number of key personnel or a rationale for the number of key persons proposed. Id. at 36.

Erinys's additional attempt to poke holes in Aegis's proposal is meritless. Aegis proposed [redacted] AR, Tab 16 at 1102 and Table 1-1, at 1166-68 and Table 2-3; see also AR, Tab 16 at 1233-51 (Appendix A to Vol. II Technical Proposal offering resumes of key personnel). Aegis's proposa[redacted] AR, Tab 16 at 1102. Further, Table 1-1 (AR, Tab 16 at 1102) and Table 2-3 (AR, Tab 16 at 1166-68) in the Aegis proposal clearly describe how the duties and experiences of the key personnel relate to the current solicitation. In contrast, it is difficult to ascertain from Erinys's proposal how its [redacted] key individual's past experience would translate into running security operations. Nor is this information reflected in the project director's resume, which is replete with non-relevant political, fiscal and independent consultant experience. AR, Tab 61 at 3453-56.

**D. Erinys's Property Control System was Evaluated in Accordance With the RFP Criteria**

Finally, Erinys even argues that it was improperly downgraded because it did not provide documentation from Erinys's [redacted] regarding its management of government property. Erinys Motion at 37. Again, Erinys states that the RFP did not require the information and Aegis did not submit documentation showing [redacted] Nor, Erinys asserts, did ArmorGroup supply a similar letter, but instead relied on [redacted] Erinys Motion at 37.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Contrary to Erinys's allegations [redacted] AR, Tab 4 at 131 (Section L.6.5). Accordingly, the RFP did not require the information Erinys complains Aegis should have provided.

**CONCLUSION**

For the reasons stated above and in the Aegis and Army motions, the Erinys motion should be denied. The Court should grant the cross-motions of the Army and Aegis and dismiss the Erinys Complaint with prejudice.

Respectfully submitted,

Date: August 17, 2007

By: /s/ John S. Pachter
John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of August, 2007, "RESPONSE OF INTERVENOR-DEFENDANT AEGIS DEFENCE SERVICES LTD. TO PLAINTIFF ERINYS IRAQ LTD.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan D. Shaffer
Jonathan D. Shaffer



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER