AGREED UPON REDACTIONS - MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

ERINYS IRAQ LTD.

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant

and

AEGIS DEFENCE SERVICES LTD.

Intervenor-Defendant.

CFC No. 07-562C

Judge Christine O.C. Miller

~~**FILED UNDER SEAL**~~

Proposed Redacted Version for Public Release

**AEGIS'S OPPOSITION TO ERINYS'S MOTION FOR AN INJUNCTION PENDING APPEAL**

John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC

Dated: September 5, 2007

~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

Statement of the Question Involved .......... 1

Statement of the Case .......... 1

ARGUMENT .......... 3

I. ERINYS HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS .......... 3

A. Erinys's Protest Claims Are Untimely .......... 3

B. The Agency's Price Analysis Was Reasonable .......... 5

1. Erinys's Erroneous "Hourly Rate" Argument Unmasked .......... 5

2. The Agency's Price Reasonableness and Realism Determinations Are Supported by the Record .......... 9

II. ERINYS HAS FAILED TO SHOW IRREPARABLE HARM .......... 12

III. THE PUBLIC INTEREST AND OTHER AFFECTED PARTIES WILL BE INJURED BY THE GRANTING OF INJUNCTIVE RELIEF .......... 12

CONCLUSION .......... 13

CERTIFICATE OF SERVICE .......... 14

PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

Blue & Gold Fleet, L.P. v. United States,
492 F.3d 1308, 2007 U.S. App. LEXIS 15150 at *8 (Fed. Cir. 2007) .............................. 5, 13

Chapman Law Firm v. United States
63 Fed. Cl. 519 (2005) .............................................................................................. 9

Cmty. Heating & Plumbing Co. v. Kelso,
987 F.2d 1575 (Fed. Cir. 1993)................................................................................. 13

Hawker Eternacell, Inc.,
B-283586, November 23, 1999, 99-2 CPD ¶ 96 ............................................................ 9

Info. Sciences Corp. v. United States,
73 Fed. Cl. 70 (2006) .................................................................................................. 9

Murray-Benjamin Elec. Co., LP,
B-298481, September 7, 2006, 2006 CPD ¶ 129 ............................................................ 9

Precision Std., Inc. v. United States,
__ F.3d __, 2007 U.S. App. LEXIS 8092 (Fed. Cir. April 6, 2007)........................................ 9

**Regulations**

FAR 9.103(b) ............................................................................................................ 11

FAR 9.104-1(a) .......................................................................................................... 11

FAR 9.104-1(b) .......................................................................................................... 11

FAR 15.306(c) ............................................................................................................ 2



~~PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER~~

AGREED UPON REDACTIONS - MAY BE MADE PUBLIC

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**Washington, D.C.**

**BID PROTEST**

| | |
|---|---|
| ERINYS IRAQ LTD.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant<br><br>and<br><br>AEGIS DEFENCE SERVICES LTD.<br><br>Intervenor-Defendant. | CFC No. 07-562C<br><br>Judge Christine O.C. Miller<br><br>**FILED UNDER SEAL** |

**AEGIS'S OPPOSITION TO ERINYS'S MOTION FOR AN INJUNCTION PENDING APPEAL**

**Statement of the Question Involved**

Whether a motion for injunction pending appeal that fails to meet the Federal Circuit's four-part test should be denied.

**Statement of the Case**

Aegis Defence Services Ltd. ("Aegis") opposes Erinys Iraq Ltd.'s ("Erinys") motion for injunction pending its appeal of the Court's judgment denying Erinys's protest. Erinys fails in its effort to explain why its case for an injunction is any different from the one the Court has already rejected. This Court's Opinion, which contains a thoughtful and sound analysis, presents two

salient features for present purposes: (1) Erinys's arguments constitute an untimely challenge to the Request for Proposals' ("RFP's") evaluation scheme (August 29, 2007 Opinion ("Op.") at 23, n.6) and (2) Erinys's position, which attempts to extract an hourly rate based on the offerors' varying productive hours, "reflects a misunderstanding of the type of contract for which the JCC-I/A [Joint Contracting Command-Iraq/Afghanistan] was soliciting." (Op. at 22.)

Erinys has never alleged, much less proved, that its proposal was among "the most highly rated," the standard for inclusion in the competitive range. FAR 15.306(c). Nor has Erinys ever alleged or proved a prejudicial violation of statute, regulation or the terms of the RFP. Nor has Erinys suggested how, even if the competitive range were somehow expanded, the additional offeror would not b[redacted] instead of Erinys. Rather, Erinys simply asserts that the agency could have done a better job of explaining its decision. However, the alleged duty to do so springs not from any legal requirement but rather from Erinys's imagination. (No doubt if the Court took Erinys's bait, Erinys would repeat its refrain in the next iteration, and the one after that, like the pedantic professor whose students can never rise to the occasion.) In the meantime, Erinys earns about $3 million every month it succeeds in delaying the inevitable. AR, Tab 1 at 2 (showing 2006 expenditures for Erinys of approximately $35,799,180.84).

Erinys's claim of irreparable harm stems from its chosen strategy of adopting a business model that excluded other prospects. Otherwise Erinys would not allege that it is at risk of losing its workforce. There is nothing unusual about an incumbent workforce continuing to



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

work for a successor contractor. That is the norm in the service contracting industry. Having failed to measure up in the marketplace, Erinys seeks to make the Court a guarantor of Erinys's viability as an ongoing concern. The public interest and that of other interested parties would be disserved by the granting of an injunction pending appeal.

## ARGUMENT

### I. ERINYS HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS

#### A. Erinys's Protest Claims Are Untimely

Erinys has complained throughout that ***the RFP*** did not define the number of hours to use in calculating a Full Time Equivalent ("FTE") in the technical proposal or "a quantity of one" in the price proposal. In its August 22, 2007 Amended Complaint, Erinys charged that the RFP failed to direct offerors to propose a specific number of FTEs for each labor category. August 22, 2007 Erinys Amended Complaint ("Erinys II Amended Compl."), at ¶ 21, p. 7. This set the stage for Erinys's objection to the agency's use of the very "self-selected quantities" the RFP envisioned. The Erinys II Amended Complaint states as follows in ¶ 21:

> The RFP did not direct offerors to propose any specific number of FTEs for each labor category. Rather, each offeror determined its own quantities of FTEs for each labor category. In this way, each offeror's CLIN "ceiling" prices were derived from the self-selected quantities proposed by the offeror.

Continuing this theme, Erinys objected as follows: "The RFP, however, never defined the number of hours that should be included in calculating an FTE in the technical proposal or in calculating a 'quantity' of 1 in the price proposal." [1] Erinys Opposition to the Government's and

---

[1] It is unclear what Erinys means by "a quantity of one." As discussed below, the agency pegged the Unit Price to a monthly price for the services required by each Contract Line Item Number ("CLIN"). In other words, a person-month.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

Aegis's Motion for Judgment on the Administrative Record ("MJAR") ("Erinys Opp.") at 5 (emphasis in original); Op. at 21-22. Erinys further stated: "***The Agency's failure to define*** the number of hours required for the monthly rate ***created huge pricing disparities*** among offers." Erinys Opp. at 6. (emphasis added).

Erinys did not file any protest against the terms of the solicitation, but instead waited until it learned it was not in the competitive range. Then it protested that the ***very same*** different quantity estimates in the offerors' proposals ***contemplated by the RFP*** prevented a fair evaluation. In other words, Erinys urges that the price evaluation was flawed because of what ***the RFP says***.

Erinys alleges that the solution to this "problem" is to "normalize [FTE productive hours] on an hourly basis." On this basis, Erinys would derive an "hourly rate" predicated on FTE productive hours. August 21, 2007 Oral Argument Transcript ("August 21, 2007 Tr.") at 90;[2] Erinys Opp. at 7-8. This assertion is seriously in error, as discussed below. It is also untimely, as the agency made clear in answers to pre-bid questions 49 and 50 that (1) the FTE "productive labor" amounts calculated in response to Section L.5.2.1 were not the same as the "Quantity" called for in Table B, and (2) the government required ***monthly rates*** for the monthly units listed on Table B.

Erinys's assertion that the absence of quantity estimates in the RFP prevented the agency from conducting a proper evaluation of proposals should have been raised as an objection or

---

[2] At oral argument Erinys counsel stated: "***There is nothing that we can find in the RFP or the PWS*** [Performance Work Statement] that says what that should have been or that defines what this service is going to be in such a way that we can do anything but normalize on an hourly basis." August 21, 2007 Tr. at 90. (emphasis added).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

protest before submission of proposals. Op. at 23-24, n.6; Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 2007 U.S. App. LEXIS 15150 at *8 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").

**B. The Agency's Price Analysis Was Reasonable**

**1. Erinys's Erroneous "Hourly Rate" Argument Unmasked**

Erinys knew from the RFP that offerors would propose varying quantity estimates, and that this would not affect ultimate pricing of ***task orders***, which would be based on unit prices. The Erinys II Amended Complaint, ¶ 21, p. 7 states "the actual ***ID/IQ task orders*** will not be based upon an offeror's quantity estimates in its proposal. It will be based on actual needs." (emphasis added). Erinys fails to grasp that for the evaluation of the instant proposals, the agency elected to use the Unit Price – based on the person-month – as the common basis for evaluation of prices. The agency conducted this price evaluation, as it clearly stated it would, without regard to the "productive hours" contained in the technical portion of the proposals.

The monthly unit price was confirmed in pre-proposal question and answer number 50:

> The unit listed is "Month" on table B. Does the government want a "per month" rate for the labor category?
>
> ***ANSWER – Yes, monthly rates are required.***

AR, Tab 9 at 516.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

The agency also made clear in pre-proposal question and answer number 49 that the FTE amounts (the "productive hour" quantities mentioned by Erinys) are not the same as – and not to be confused with – the "quantity" called for in the B Tables:

> 49. Reference: RFP Section B, Schedule:
> The Table shows the labor categories to be fixed-priced. The table asks for: quantity, unit, unit price and ceiling price. Elsewhere in the proposal we are to calculate the FTE for the labor categories based on productive labor hours (in association with the PWS items).
> Are the FTE amounts for the labor categories calculated in response to Section L.5.2.1 the "Quantity" called for in Table B? If not, what quantity is the government expecting?
>
> ***ANSWER – No. The quantities in tables B.1, and B.2 are expected to be based upon the contractor's proposed staffing to provide the best value performance of the contract requirements.***

AR, Tab 9 at 516.

These explanations to offerors eliminated the "problem" Erinys alleges with respect to "self-selected" quantity estimates. Thus, the agency correctly stated that "differences in staffing levels presented in the price proposal and the technical proposal … will not affect the unit prices paid for services ordered." AR, Tab 41 at 2803. Yet it is those same differences that Erinys has so strenuously and erroneously attempted to exploit as the basis for agency error.

Thus, even while acknowledging that the "unit price" is a monthly rate (Erinys Opp. at 5), and in the teeth of the agency's explanation that "productive hours" were not the same as the hours used for Table B pricing, Erinys nevertheless asserted that

> if the Government purchases labor at Aegis's monthly rate, the Government will only receive [redacted] productive labor hours. If the Government needs more labor hours for a particular job, the



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> Government will have to pay for two Aegis employees, where it would only have to pay for one employee under Erinys' proposal.

Erinys Opp. at 7.

This defies the agency's pre-proposal answers to offerors' questions by confusing productive labor hours, associated with FTEs, with quantities in Table B Unit Prices. Erinys also attempts to convert the monthly pricing unit of a "person-month" into a "person," whereby the agency would obtain only the services of an individual, measured by the "productive hours" for FTEs in the technical proposals. Thus, Erinys attempts to create an "hourly rate underlying each monthly rate." Erinys Opp. at 7. Erinys next argues that because its proposal assumed up to [redacted] productive hours per person per year, its so-called "hourly rate" is the lowest, as compared to the case of Aegis, where the government will obtain "only" [redacted] productive hours per person. Id.[3] This line of argument is contradicted by the record.

As counsel for the government and intervenor made clear at oral argument, and as properly found by the Court, Erinys disregarded the following: For each Unit Price the government will obtain one person-month, up to 24/7. Op. at 22, n.5. One person-month does not mean one person. Some positions, such as Guard Force Services and Regional Operations Centers, require 24/7 staffing. As the Court held, the agency

> was not soliciting bids for an hourly labor rate, but, rather, soliciting a number of units on a position-by-position basis for a month at a time: when the agency hired one Security Escort Team member (CLIN 1022AA), AR Tab 4 at 103, it was not hiring one

[3] Erinys's claim that its individuals actually work productively [redacted] hours a year is absurd. It translates to [redacted] "productive hours" each day, [redacted] days a year, with no holiday [redacted] Thus, by artificially increasing its "productive hours," Erinys claims a lower "hourly rate." An agency evaluation endorsing such an approach could hardly be sustained as rational.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

> individual who would work a certain number of productive hours; it was securing a guarantee from the offeror that the position would be fulfilled according to the PWS.

Op. at p. 22.[4]

Thus, there is no basis for Erinys's assertion that the government will have to pay for two Aegis employees versus only one Erinys employee, and that the government will have to purchase more "units" to obtain the same level of services. Erinys Opp. at 7. As the Court found: "The JCC-IA was not buying productive hours at all – it was buying fulfillment of positions per the PWS." Op. at 23; August 21, 2007 Tr. at 93-98; AR, Tab 4 at 146-55 (PWS Sections 4.1.1.2, 4.1.1.3, 4.2.3.1.2, 4.3.5, 4.3.10, 4.6.2). With Erinys's flawed understanding of productive hours as the foundation for its proposal pricing strategy, there can be little wonder that Erinys got so far off course.

Erinys also states: "Just because an offeror guarantees 24/7 service does not mean that the offeror will be able to fulfill that promise. . . " See Erinys August 31, 2007 Memorandum in Support of Motion for Injunction Pending Appeal ("Erinys August 31, 2007 Memorandum"), at 4. Whether a contractor will fulfill its contractual commitments is a matter of contract administration not for resolution in a bid protest. See generally, Precision Std., Inc. v. United

[4] This was Aegis's understanding as well. Aegis's proposal defines "Unit Price" as follows:

[redacted]

AR, Tab 16 at 1456. (emphasis added). Aegis's technical proposal ¶ 2.3.1 states in part: [redacted] AR, Tab 16 at 1161. (emphasis added).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

States, __ F.3d __, 2007 U.S. App. LEXIS 8092 (Fed. Cir. April 6, 2007) (Court of Federal Claims does not review contract administration matters in a bid protest context) (citing Chapman Law Firm v. United States 63 Fed. Cl. 519, 527 (2005)); Hawker Eternacell, Inc., B-283586, November 23, 1999, 99-2 CPD ¶ 96 at 3 (contract administration matters are not resolved in bid protests); Murray-Benjamin Elec. Co., LP, B-298481, September 7, 2006, 2006 CPD ¶ 129 (citing Hawker Eternacell, supra).

**2. The Agency's Price Reasonableness and Realism Determinations Are Supported by the Record**

The Court correctly held that the agency's price reasonableness and realism determinations were rational and supported by the record. Op. at 18-23.

Price realism in a fixed price procurement, unlike cost realism in a cost reimbursement procurement, involves only minimal analysis.[5] This Court's opinion in Info. Sciences Corp. v. United States, 73 Fed. Cl. 70, 77 (2006), makes clear that price realism can consist, among other things, of comparing prices against each other and against the government's estimate.

As the Court correctly held in the present case: "Plaintiff's operating premise that a particular analysis was required is not correct." Op. at 20. In addition, the agency price realism determination easily passes the test of rationality set forth in Info. Sciences (see August 21, 2007 Tr. at 76-79):

1. The Aegis and ArmorGroup North America, Inc. ("ArmorGroup") prices were close to each other, the result of competition.

---

[5] There are two reasons: first, contractors are bidding on the basis of price, not cost. The fixed price nature of the contract provides risk protection to the government, and competition tends to insure realistic prices. Second, the government may not inquire into the makeup of the fixed price.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

2. Aegis and ArmorGroup were closest to the Independent Government Estimate ("IGE") pricing and Erinys was the farthest removed from it. Aegis August 17, 2007 Response to Erinys's MJAR ("Aegis Response") at 10 and Appendix at 1-3; see also Aegis August 10, 2007 MJAR ("Aegis MJAR") at Appendix at 4, 11-12 .[6] Under the language of the RFP, the Aegis and ArmorGroup prices were realistic because they were consistent with "the anticipated price of performance." Aegis Response at 14. Erinys complains that the government failed to compare offerors' prices using the IGE quantities. Erinys Opp. at 14. Erinys does not allege that it was prejudiced, and for good reason. The calculations attached to Aegis's August 17, 2007 Response at Appendix pages 1-3, are based on numbers in AR, Tab 11.[7] Those calculations confirm that Erinys's prices were not competitive, and that the competitive range proposals were realistic. For example, Erinys propose[redacted]unit prices at ***more than two times greater*** than the IGE, while Aegis and ArmorGroup only had[redacted]unit price that high. Aegis Response at 10 and App. at 1-3. Also, an analysis of the number of positions at plus or minus 10% of the IGE values shows Aegis[redacted] Armor Group[redacted]and Erinys[redacted] Aegis Response at 10 and App. at 2 of 3. Erinys was the clear leader in the category of unit prices ***more than***[redacted]over the IGE. Id.

3. The Erinys unit prices were approximately[redacted]higher than the Aegis and ArmorGroup unit prices using the IGE of staffing. Given that realism of Aegis and ArmorGroup

[6] At the August 21, 2007 oral argument, Aegis withdrew the declaration of Charles Bonuccelli and left the mathematical calculations in the exhibits to its two briefs as being based on the record and self-explanatory. August 21, 2007 Tr. 66-67. Erinys did not take exception to the content of the exhibits.

[7] The calculations take the Unit Prices of four offerors and extend them.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

pricing is established by comparison of the two, and by comparison to the IGE, this is another indication that Erinys's prices are ***not*** competitive, also using the IGE as a guide. Aegis MJAR, Exhibit 4 to Charles Bonuccelli's Declaration.

4. The agency conducted an in-depth review of technical proposals and concluded Aegis demonstrated a clear understanding of the requirements and set forth a superior technical solution. Aegis rated [redacted] in management, technical and past performance, and has a stellar record as incumbent contractor. Given the closeness in the Aegis and ArmorGroup pricing and the soundness of the Aegis technical proposal, there was no reason for the agency to believe that Aegis's prices were so low as to indicate it did not understand the work. Nor has Erinys suggested any. Nevertheless, Erinys says that the agency needs to probe for "indications of risks that particular teams could not perform for the prices they promised." Erinys August 31, 2007 Memorandum at 4. Aside from demanding that the agency chase ghosts, Erinys overlooks that in a fixed price contract the contractor bears pricing risk. Even where, unlike here, the contractor has submitted a below-cost bid, the question is one of contractor responsibility; i.e., whether the contractor has the financial resources to perform. Contractor responsibility is determined in connection with a proposed award, not at the time of the competitive range decision.[8]

5. The Army did not identify any management, technical schedule or price risks in the competitive range offerors' proposals that needed to be documented.

---

[8] To be determined responsible, a prospective contractor must have "adequate financial resources to perform the contract, or the ability to obtain them" (FAR 9.104-1(a)), and "[b]e able to comply with the required or proposed delivery or performance schedule ...." FAR 9.104-1(b). The responsibility determination is made before award to a proposed contractor: "No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility." FAR 9.103(b).



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

In short, contrary to Erinys's assertion, there were no "red flags" and no need for concern on the part of the agency. In stubbornly asserting that the agency has not justified the proposed reduction in the costs of current work, Erinys overlooks the following: (1) the current Aegis contract is a cost-reimbursement contract, and the current Erinys contract is a Time & Materials ("T&M") contract, making comparisons to the current fixed price effort irrelevant; (2) the agency can legitimately anticipate economies resulting from combining the work now done by two contractors into one contract; (3) there may be additional efficiencies, including drawdown and enhancements in operations; and (4) the closeness of the competitive range Unit Prices with the IGE anticipated prices provides further validation of the agency's determination. August 21, 2007 Tr. at 74.

## II. ERINYS HAS FAILED TO SHOW IRREPARABLE HARM

Erinys's motion makes clear that it has no other business prospects for its workforce. Erinys confuses lack of sound business planning with irreparable harm. Erinys's failure to create a business model with alternative strategies cannot be laid at the feet of the Court. It is a misuse of the judicial process for Erinys to claim protection as an orphan when its fate was in its own hands.

## III. THE PUBLIC INTEREST AND OTHER AFFECTED PARTIES WILL BE INJURED BY THE GRANTING OF INJUNCTIVE RELIEF

The government and the bidding public are entitled to assurance that the competition statutes and regulations will be enforced, and that the results of full and open competition will not be frustrated by the need to defend them against costly, untimely and meritless litigation.



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

See Blue & Gold Fleet, supra, at *10, quoting Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1580 (Fed. Cir. 1993) (the requirement for timely protests against the content of solicitations "was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact.")

## CONCLUSION

As shown in the Court's Opinion and the foregoing discussion, this case is not, contrary to Erinys's suggestion, a "close call." The Court should deny Erinys's motion for injunction pending appeal.

Respectfully submitted,

Date: September 5, 2007

By: /s/ John S. Pachter
John S. Pachter, Counsel of Record
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312
*Counsel for Aegis Defence Services Ltd.*

*Of Counsel*:
Richard C. Johnson
Jonathan D. Shaffer
Mary Pat Gregory
SMITH PACHTER MCWHORTER PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Tel: (703) 847-6300
Fax: (703) 847-6312



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH
COURT OF FEDERAL CLAIMS PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of September, 2007, "AEGIS'S OPPOSITION TO ERINYS'S MOTION FOR AN INJUNCTION PENDING APPEAL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Mary Pat Gregory
Mary Pat Gregory



PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH COURT OF FEDERAL CLAIMS PROTECTIVE ORDER